thereof has been occasioned, aggravated, or negligently permitted by the act of some third party charged with the duty of obviating or removing it." In this case the accident occurred about 3 o'clock in the afternoon, the person injured having full knowledge of the condition of the street, and yet the only explanation of the accident is that "the two feet were taken right out from under me." We think it was incumbent upon the plaintiff to bring herself within the rule above quoted, and the evidence fails to do this.

There were some exceptions taken upon the trial which we deem erroneous, but, for the reasons above stated, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except WILLIAMS, J., who dissents.

---

LANE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. INJURY TO RAILROAD EMPLOYÉ—NECESSARY RULES.

It being the practice in clearing out the ash pans of locomotives, placed on a track for such purpose, to have one called a "hostler" enter the engine and shake down the ashes, and another crawl under the engine and hoe out the pan, the company, as matter of law, is not required, to prevent injury to the one under the engine by its being started up by employés while he is still under it, to prescribe and observe at the same time a rule that the hostler remain in the engine as long as his fellow servant is working under it, and also a rule that lights be kept at each end of an engine so long as one is working under it; the presence of the hostler alone being enough to prevent the engine's being started under the impression that no one was under it.

2. SAME—EVIDENCE—OPINION.

In an action for injury to a railroad employé by a locomotive being started while he was under it cleaning out the ash pan, no rules being prescribed by the company to prevent such an accident, a witness may not testify that certain rules are necessary; this being a question for the jury.

McLennan, P. J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Frank Lane against the New York Central & Hudson River Railroad Company. From a judgment for $5,121.86 on a verdict for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Henry Purcell, for appellant.
N. F. Breen, for respondent.

HISCOCK, J. This action was brought by plaintiff to recover damages claimed to have been sustained through the negligence of the defendant. He was injured by a locomotive in defendant's yard being put in motion while he was at work thereunder cleaning out the ash pan, and the negligence alleged was that defendant had failed to prescribe proper rules to prevent employés from starting up an engine under such circumstances. We think such errors were com-

mitted by the learned trial justice in receiving evidence as to the necessity for such rules and in permitting the jury to follow such evidence as requires a reversal of the judgment.

Defendant had a track near the roundhouse in its yard at Watertown, N. Y., upon which it was accustomed to run engines for the purpose of having their ash pans cleaned of the accumulated ashes and cinders. There was accommodation for seven or eight engines at a time. The ordinary process was that an employé, known as a "hostler," and another, who hoed out the ash pans, in the first instance commenced work upon the engine at the same time. The hostler would enter the engine and shake down the ashes. The other man—who upon the occasion in question was plaintiff—would crawl under the engine for the purpose of hoeing out the pan. Ordinarily, a hostler would get through first, and, if there were other engines to be cleaned out, would sometimes, at least, leave the first engine while the hoer was still under it, and go to a second one. There was evidence tending to show that no rules had been prescribed which we—certainly as matter of law—can say were applicable to the situation for the guarding of an engine while the employé was at work thereunder. Sometimes train crews would come down and take an engine from this yard instead of from the roundhouse or some other proper place, and sometimes this would be done by strange crews. While defendant was thus at work under an engine during the night of December 13, 1900, and apparently after his companion hostler had left that particular engine to go elsewhere, an engineer came down, and put the locomotive in motion, with the result that plaintiff was seriously injured. There was evidence tending to show that upon four or five other occasions during the several years preceding this accident an engine in a similar manner had been improperly put in motion while the hoer was at work thereunder. Plaintiff had been doing the work in question for a period of eight or nine years.

Upon the trial, in answer to a hypothetical question over the objection and exception of the defendant, a witness was allowed to state that a rule would have been proper to protect the man hoeing out the engine; also that such a rule was "necessary." He was then further allowed to state that there should have been a rule "not to allow a hostler to leave an engine alone until the man under there to hoe out was out of there," and also "by placing a red light on each end of the engine." He did not state these rules as being necessary or proper in the alternative, but coupled them together. In submitting the case to the jury the learned trial justice held that the jury must determine "whether those two specific rules or whether one of them should have been adopted by the defendant for the protection of this plaintiff," and subsequently he refused to charge "that the adoption of both the rules as described or testified to by the witness Cooper would have been an exercise of care greater than the law would warrant under the circumstances of the case, or than the defendant, under the circumstances of the case, would be required to exercise." Thus we have it that the witness, as an expert, was allowed to swear that it was "necessary" that the defendant, in the proper operation of its road, should prescribe these two specific rules, and then that the jury

were permitted upon and following such evidence to charge the defendant with such obligation.   In the first place, we think it was er-, ror for the trial court to refuse to charge the request of the defendant above quoted.   We think it may properly be held as a matter of law that the defendant should not be required to prescribe and observe both of the rules suggested.   If the hostler remained on the engine while his fellow servant was at work thereunder hoeing out the pan, we cannot conceive how it could be necessary to have any further precautions in the way of red lights placed at each end of the locomotive.   The place for the hostler while he was at work upon the engine was in the cab, and if he stayed there nobody could possibly get upon the engine and put it in motion without his objection and warning.   This ought to be sufficient protection for any contingency which could possibly arise outside of an attempt by some one willfully to take possession of and move off with the locomotive.   In the second place, we think it was incompetent and improper to allow the witness to testify, in effect, that these rules were "necessary," thereby meaning that they were necessary and indispensable to a proper and safe operation by defendant of its road.   No harm, at least, could have come from allowing the witness to state that either of the rules indicated would have been practical and effective to prevent an accident such as occurred.   This, however, was so self-evident that a jury could have comprehended it without a sworn statement to that effect.   When, however, the witness was allowed to go further, and testify that such a rule was necessary—that is, that the road could not be safely operated without it—we think his testimony went to undue lengths, and may have had an improper and injurious influence with the jury.   It is difficult to draw always the line beyond which expert testimony may not go, but in this case it seems clear that it has gone beyond what should be the location of that line into a field which was pre-empted by the jury.

The situation to be dealt with in this case was a comparatively easy one.   There was not involved, as in some cases, any complex machinery, extensive and dangerous structures, subtle and not easily understood chemical or mechanical elements, and attributes or questions of the resistance by various materials to strains or pressure and the proper methods of putting such materials together to resist the same.   The locomotive, as it stood over plaintiff, was of itself perfectly harmless.   It is not suggested that it got in motion through any of its inherent qualities or conditions.   It only became harmful to plaintiff when put in motion by a careless co-employé.   The main element, at least, to be considered by the jury was the liability of a negligent servant stepping upon and putting in motion the locomotive without knowing whether a man was at work thereunder.   We assume that everybody understood that engines were put upon the track in question for the purpose of being cleaned out, and that the only way they could be cleaned out was by plaintiff or somebody else going under them.   Simple human carelessness was therefore the main thing to be guarded against.   The evidence very completely and simply put before the jury this situation, and also by reference to the history of eight or nine years the liability to occurrence of such

a thing as did happen when plaintiff was injured. Under these circumstances the jury had before them the entire situation, and were perfectly competent to decide whether it was necessary that defendant, in the operation of its road, should prescribe some rule.

In opposition to this view plaintiff has called to our attention various cases in which the court has in substance said that plaintiff could not recover because there was no evidence by experts or other witnesses to show that any rule was necessary or practicable in the case under review. Each case, upon the question under review, must be largely decided by its own peculiar circumstances. Furthermore, we do not regard a suggestion like the above as sufficient to lay down the rule that a witness may go upon the stand, and in terms swear that a certain rule is necessary. He very likely might give evidence from which a jury could say this.

In the next place, our attention is called to the recent case of Finn v. Cassidy, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877, as a substantially controlling authority upon the admissibility of the expert testimony in this case. We do not, however, regard it as such. Whatever was said in that case must be read and interpreted in the light of the facts and issues which were actually before the court for decision. In that case the plaintiff was injured by the caving in of the bank of a trench which was in process of construction. This trench was 31 feet deep, and one side of it for a distance of 20 feet ran along a chimney stack foundation which was 20 feet deep, the stack itself being over 100 feet high. The trench had been carried down at an angle with a "batter wall," and narrow cuts three or four feet deep had been made, starting from the bottom of the trench and running at right angles through the wall and extending upwards to within about a foot of the foundation, and which cuts were filled with piers of masonry as soon as made. The earth between the tops of the cuts and the bottom of the foundation was hardpan, and had become insecure through the action of water. Under these circumstances an expert was allowed to state that the method of constructing the cut for the purpose of underpinning or supporting the foundation of the stack was improper, and to state what, in his opinion, would have been a proper method to render it safe for persons working therein. The Court of Appeals, in sustaining the admission of this evidence, amongst other things said:

·"It is quite probable that there was not a man upon the jury, unless he happened to be an expert, who would have attempted to solve the problem of properly supporting and sustaining the chimney·in question without calling to his aid some expert advice from an engineer or some person of experience on such a subject. The common mind, as we know it, is not always equal to the proper solution·of such a problem in such an emergency, and the counsel and advice of engineers or persons of experience in such matters is always valuable and desirable."    ·

And again:

"The contention that the jury could have drawn the conclusion as well as the engineer is not, I think, correct. It is very difficult for a witness to picture to a jury in words the real situation that confronted the plaintiff at the moment that he stepped into the trench by the direction of the master. It would be still more difficult for them to determine what should have been done in order to

make the place where the plaintiff was injured reasonably safe and suitable for the workmen. To say that an engineer of experience in such matters could not assist the jury by an expression of opinion would be to ignore well-known facts, and to disregard the principle upon which the opinions of experts are received in evidence."

And the learned court, in fortification of its opinion that the evidence in that particular case was admissible, cited a line of authorities in which similar expert testimony had been held competent. In accordance with the principles already adverted to by us, the cases so cited almost uniformly involved questions of construction, or of the strength of materials, and the proper method of arranging the same to sustain weight; of the strain which would be put upon structures by various uses; of the proper construction and use of various machines. The cases so cited in approval of the doctrine laid down in the case under review plainly disclosed situations and issues which could not be so put before a jury as to secure an intelligent judgment, but which clearly could be explained and elucidated by the opinions of people especially expert therein.

It will be seen that the issue presented in the case at bar was very different from, and very much simpler than, the ones involved in the Finn Case and those other cases cited therein. It seems to us that this case comes more within the principles of Ferguson v. Hubbell, 97 N. Y. 507, 49 Am. Rep. 544, where the issue involved was whether it was negligent to set fire to fallow land at a dry season of the year, when the wind was blowing a strong gale. All of the conditions which surrounded the act complained of were simple and easily understood. They were all spread out before the jury by the evidence, and it was held that the jury were perfectly competent to form a judgment upon the matters involved, and that it was error to allow the evidence of experts that such act was or was not negligent. This case seems much less to call for the opinion given by the expert than did the case of Van Wycklen v. City of Brooklyn, 118 N. Y. 424, 24 N. E. 179, for the evidence there offered. In that case the trial court refused to allow an expert to give as his opinion that certain sunken wells would not draw water from a specified source. The Court of Appeals sustained this ruling, saying:

"While it is no longer a valid objection to the expression of an opinion by a witness that it is upon the precise question which the jury are to determine, * * * evidence of that character is only allowed when, from the nature of the case, the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable."

The principles laid down in the very careful opinion in the case of Schwander v. Birge, 46 Hun, 66, seem to us very applicable to the disposition of the present appeal. In that case the intestate was killed while attempting to escape from an upper floor of a building used by defendant for manufacturing purposes. The alleged negligence consisted in not providing sufficient means of egress from the building. Upon the trial the defendant's superintendent was allowed to state in substance that the facilities supplied did constitute "a proper mode of access and egress from the building under any circumstances," and that from the experience which he had had, and in the exercise of his judg-

ment, he did regard the stairs and the door furnished "as a sufficient and proper mode of egress if any accident occurred." The Appellate Court held that it was improper to allow this evidence, stating, in substance, that the question whether the means of egress were reasonably safe, and all that due care required of the defendant to provide for his employés, was for the jury; that that was one of the vital questions to be determined by them; and that the entire location and situation could be stated, and a complete description of the room involved given, so as to convey to the jury an intelligent understanding of the situation; and that under such circumstances the rules of evidence required that the testimony of a witness should be confined to a statement of the facts, and that the conclusions or opinions of witnesses should not be permitted in evidence. The court, in its excellent opinion, after a careful review of many authorities bearing on this question, says:

"The governing rule deduced from the cases permitting the opinions of witnesses is that the subject must be one of science or skill, or one of which observation and experience have given the opportunity and means of knowledge, which exists in reasons rather than in descriptive facts, and therefore cannot be intelligently communicated to others not familiar with the subject, so as to possess them with a full understanding of it. In the case at bar none of the elements requisite to the opinion of an expert seem to exist in reference to the subject of inquiry referred to. It involved no question of architecture as such, no combination of forces or strength of structural support requiring scientific or mechanical deduction."

We therefore reach the conclusion in this case that it was improper to allow the witness to invade the jurisdiction of the jury, and to express his opinion as to the necessity of certain specified rules, thus supplanting and forestalling the action of the jury upon the vital question in the case without any of those adequate reasons therefor which at times may concededly exist. We think the judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event, upon questions of law only, the facts having been examined, and no error found therein.

SPRING and STOVER, JJ., concur. WILLIAMS, J., concurs in result upon the ground of assumed risk. McLENNAN, P. J., dissents.