JOHN W. MEYERS, Respondent, v. THE HIGH-
    LAND BOY GOLD MINING COMPANY, a Cor-
    poration, Appellant.

### No. 1557.   (77 Pac. 347.)

1. **Master and Servant: Injuries to Servant: Evidence:
    Opinions.**
    In an action for injuries to a servant where one of the principal
        grounds of negligence alleged was that the place of work
        was insufficiently and improperly lighted, and this allega-
        tion was denied by the answer, the question of the suf-
        ficiency of the light was for the jury, and conclusions of
        witnesses that the light was insufficient were inadmissible.[1]

2. **Same: Subsequent Conditions.**
    In an action for injuries to a servant where plaintiff testified
        that there was no plank at a place where it was necessary
        that there should be one, testimony that about three hours
        after the accident an employee noticed that there was a
        plank there, where it appeared that no one was working
        at or about the place in the meantime, and it was not shown
        that there was any change from the conditions existing at
        the time of the accident, was competent, as showing that
        shortly after the accident the same conditions existed.

3. **Same: Questions for Jury.**
    The questions of the truth of offered evidence and the weight
        to be given to it are for the jury, and not for the court,
        to determine.

    McCARTY, J., dissenting.

### (Decided June 20, 1904.)

Appeal from the Third District Court, Salt Lake
    County.—*Hon. S. W. Stewart*, Judge.

[1]Black v. Telephone Co., 26 Utah 451, 73 Pac. 514; Stoll v. Daly
Min. Co., 19 Utah 271, 57 Pac. 295; Hayes v. Southern Pac. Co., 17
Utah 99, 53 Pac. 1001.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

REVERSED.

Messrs. *Sutherland, Van Cott & Allison* for appellant.

Messrs. *Sullivan & Barnes* for respondent.

BARTCH, J.—This action was brought to recover damages for personal injuries, which the plaintiff claims he received because of the negligence of the defendant. In the complaint, so far as material to this decision, it is alleged that on January 28, 1902, the plaintiff was in the employ of the defendant company at its smelting works, and while so in its employ was ordered by defendant to assist in passing crushed ore from a certain ore bin, through chutes, into an ore car; that previously the plaintiff had been employed as a helper in the roasting department, but had not until that day assisted in passing ore through the bins; that it was necessary for him, in performing such work, to stand or sit on a narrow plank or platform, about six inches wide, extending around the top of the bin; that same was not a reasonably safe place, or sufficient for him to perform the work; that defendant had negligently permitted crushed ore to collect and remain upon the platform, thereby increasing the unsafeness thereof, and had negligently failed to provide any other place for plaintiff to stand or sit; that the place and premises were insufficiently and improperly lighted; that by reason of the neglect of defendant to provide a safe place for plaintiff to perform the work, and to sufficiently and properly light said place and premises, plaintiff fell from the platform into the bin; that, after falling into the bin,

28 Utah—7

his right limb extended about five inches below the lower end of the chute, and he was unable to move or extricate himself; that defendant discovered his helpless condition, and it became its duty to use every precaution and all possible means to extricate him without injury, but that it negligently and carelessly moved the ore car, which was then immediately beneath the bin, against plaintiff's right leg, which was broken in consequence, and plaintiff otherwise injured; that the injuries so received are permanent and lasting; and that plaintiff will be unable to do any physical labor during his life. The answer denies these allegations of the complaint, and affirmatively pleads contributory negligence on the part of the plaintiff and an assumption of risk.

From the evidence it appears that the plaintiff was employed by the defendant to work in the roasting department of its smelter, about the middle of October, 1901, and continued in the employment until the date of the accident, January 28, 1902; that generally he was employed in a building separate from that in which the accident occurred; that on the day of the injury, and on one previous occasion, he was, by order of the foreman, working in the crusher building, assisting in passing ore through a certain ore bin, known as "bin No. 4," into a car standing on the track underneath the ore chute; that the bin, which was in the second story of the building, was about eight and one-half feet wide, eleven and one-half feet long, and twelve feet deep; that the timber around the top of the bin is twelve inches square, and one piece of the same size extends across the top of the bin east and west; that across the top of the bin there extends north and south also a tramway track, from two to three feet wide; that this arrangement of the timber and track leaves the openings into the bin about three and one-half by three and two-thirds feet in the clear; that the timber and the track were the only place upon which the plaintiff could stand or sit in the performance of his work; that there are a number of

bins in the same room, the room being lighted with electricity, and bin No. 3 being next to No. 4; that the ore, after being crushed, was dropped from above, first into bin No. 3, and, when that was full to above the top, the ore would run thence over into bin No. 4; that the ore collected on the timbers, and, in cold weather, would freeze on the timbers and in the bins, forming a crust over the surface thereof; that when the ore was so frozen it was necessary to push it with an iron rod to keep it moving through the chute into the car; that at the time of the accident the plaintiff was sitting upon one of the timbers of bin No. 4, and was pushing into the ore below him with an iron rod to keep the ore moving; that, while so engaged, he lost his balance, fell into the bin, and was immediately covered up with ore; that upon falling into the bin his right leg extended from the chute into the ore from a point about the knee; and that the foreman and another employee discovered him in this condition, and fearing that the ore would smother him, and believing themselves unable to extricate him in time to save his life with the car where it was, ran the car north, so as to clear the chute, and thereby broke the plaintiff's leg and caused the injuries of which he complains.

At the trial a verdict was returned, and judgment entered thereon, in favor of the plaintiff. The record contains numerous assignments of error, but they present only a few questions necessary to be determined upon this appeal.

The appellant, in the first instance, insists that the court erred in the admission in evidence of the opinions of witnesses respecting the sufficiency of light and the necessity of additional light at the ore bin in question when the accident occurred. The witness Wright, called by the plaintiff, in his examination in chief, and after having testified respecting the location and character of the lights in the vicinity of the bin where the injured man had been at work, was asked a question, as follows: "Would that be sufficient light

for the bin to enable one punching ore down to see anything about what was in the bottom of the bin?'' This question was objected to as being one for the jury to determine, and not for the witness. The objection was overruled, and the witness answered: "It would not." Thereafter, upon cross-examination, the witness Crellin, who in his direct testimony had described the location and character of the different lights with reference to the ore bin, and had stated as a fact that there was a light over bin No. 4, which fact was disputed by witnesses for the plaintiff, was asked: "Do you say a light over bin No. 4 was necessary for the safety of the men or a man working by it?" This was objected to as calling for a conclusion, and as being one of the questions which the jury was called upon to determine. The objection was overruled, and the witness answered: "It would not be perfectly necessary, but it would be more safe to have two lights there than it would be to have one."

It is clear that the objections to this testimony ought to have been sustained. Both questions were improper, under the circumstances, and the answers thereto inadmissible, under the familiar rules of evidence. As may be observed, one of the principal grounds of negligence alleged in the complaint is that the "place of work" and premises were "insufficiently and improperly lighted," and that, by reason of the neglect of the defendant "to sufficiently and properly light said place and premises," the plaintiff "fell from the platform into said bin" and was injured. This was denied by the answer, and by such denial the sufficiency of light to render the place safe became an issue in the case, to be determined by the jury from the facts and not from opinions of witnesses; the subject of inquiry being one not requiring such opinions to enable the jury to comprehend the real situation and draw correct conclusions. Where, as here, the subject-matter concerning which inquiry is being made is within the comprehension of persons of ordinary intelligence, witnesses must state the

facts, and the jury must draw its deductions from those facts. When the condition of a thing is such that language is inadequate to so describe it as to enable the jury to obtain a correct conception, or a proper realization and comprehension of it, witnesses may state their opinions in relation to it, or describe it by its effects upon their minds; but, if their opinions are founded upon facts which can be weighed and comprehended, by the jurors, as well as by the witnesses, those facts, and not opinions based thereon, should be laid before the jury.

To permit a witness, under the pleadings in this case, to state that the lights were insufficient, or that an additional light was necessary to render the place safe, would be an invasion of the province of the jury. In answering the questions asked, the witnesses necessarily decided a material issue, which the jury could readily have determined from the facts laid before them, and from facts which could have been laid before them. The cases where opinions of witnesses are received in evidence are exceptions to the general and elementary rule that witnesses must state facts, and not give their opinions. "The law does not look with favor upon the introduction of opinions in evidence. As a rule witnesses are expected to testify to facts, and it is for the court or jury to draw conclusions and form opinions from the facts thus brought before them. Even when opinions are admitted, the ostensible purpose is to inform the jurors concerning some fact, and evidence which is sometimes received from necessity has been said to be less an opinion than a conclusion of fact." 12 Am. and Eng. Enc. Law (2 Ed.), 421.

In Smead v. L. S. & M. S. Ry. Co., 58 Mich. 200, 24 N. W. 761, where it was held error to permit a witness to give his opinion as to whether or not a certain "cattle guard was sufficient to prevent animals from getting on the right-of-way under circumstances ordinarily arising at those places," it was said: "It is quite elementary that a witness can only give his opin-

ion in exceptional cases, and then only when his knowledge is such as to qualify him to some extent as an expert. I think the rule is best stated in Best on Evidence, where he says: 'This rule is necessary to prevent the other rules of evidence being practically nullified. If the opinions thus offered are founded on no evidence, or on illegal evidence, they ought not to be listened to; if founded on legal evidence, that evidence ought to be laid before the jury.' "

In Brunker v. Cummins, 133 Ind. 443, 32 N. E. 732, a witness was asked to state "whether there was sufficient room, between where that barrel was and the wall, for a man to walk with safety." The Supreme Court, holding the question improper, because calling for an expression of opinion as to negligence of the parties, said: "Even in cases where necessity justifies the expression of an opinion, the opinion cannot go to the principal points which the law requires the jury to decide."

So, in Combs v. Ditch Co., 17 Colo. 146, 28 Pac. 966, 31 Am. St. 275, it was held error to overrule an objection to a question, as follows: "From your experience as a farmer, and in irrigation in connection with it, is there water enough in that ditch now, or has there been for the last two years, to irrigate the lands which have heretofore been irrigated by that ditch?" The court said: "The question was not merely introductory. It embraced the very substance of the issue which the court was then trying; and a categorical answer, such as the question called for, would, if accepted by the court, have been a complete determination of the issue. It is an elementary rule that such questions are inadmissible."

In Hamilton v. Mining Co., 108 Mo. 364, 18 S. W. 977, where the plaintiff was injured by a coal car running over his leg, the railroad being a spur owned and operated by the defendant to its mine, the court held that the defendant could not, on cross-examination of a witness, ask him whether it was negligence for a per-

son who had business to attend to on a railroad to be standing on the rails immediately in front of a moving car, since it was for the jury to say whether such facts constituted negligence.

In Black v. Telephone Company, 26 Utah 451, 456, 73 Pac. 514, a question was propounded to a witness, as follows: ''Now, as a practical man, experienced for years in this work, as you say you have been, what would you say would be the proper thing for a man under these conditions to do—attach himself, or not?'' In upholding the action of the lower court, sustaining an objection that this question called for an opinion of the witness upon the merits, this court, speaking through Mr. Chief Justice BASKIN, said: ''As the question objected to called for the opinion of the witness, based upon conditions [what these conditions were was not disclosed by the question] on a matter which it was the exclusive province of the jury to decide, the objection was properly sustained.''

Likewise, in Stoll v. Daly Min. Co., 19 Utah 271, 284, 285, 57 Pac. 295, this court held that it was error to permit witnesses to state their opinions upon the question of the competency or carelessness of an engineer. McCARTY, District Judge, delivering the opinion of the court, said: ''The alleged incompetency and carelessness of Adamson being issues in the case, they were questions for the jury to determine. It was error to permit the witnesses, over appellant's objections, to state their conclusions and give their opinions on these issues. 'The opinion of witnesses on the substance of an issue should never be resorted to, except when the subject is beyond the knowledge and experience of ordinary men.' '' 2 Labatt, Mast. & Servt., section 830; 1 Whart., Ev., section 440; 12 Am. and Eng. Ency. Law (2 Ed.), 422; Mining Co. v. Broderick, 25 Colo. 16, 53 Pac. 169, 71 Am. St. 106; Mellor v. Utica, 48 Wis. 457, 4 N. W. 655; Gutridge v. Railway Co., 7 S. W. (Mo.) 476, 4 Am. St. 392; Bohr v. Neuenschwander, 120 Ind. 450, 22 N. E. 416; Harley v. B. C. M. Co., 142 N. Y. 31,

36 N. E. 813; Railroad Co. v. Jackson, 32 N. E. (Ind. App.) 793; Sowers v. Dukes, 8 Minn. 6 (Gil. 6); Railway Co. v. Moranda, 108 Ill. 576; Railway Co. v. English, 59 S. W. (Tex. Civ. App.) 626; Hayes v. Southern Pac. Co., 17 Utah 99, 53 Pac. 1001; Tuttle v. Lawrence, 119 Mass. 276.

The appellant also insists that the testimony as to the condition of the No. 4 bin, and as to the position of a certain plank and ore thereon several hours after the accident was proper, and that the court erred in excluding it. The testimony referred to was to be given by the witness Avery, an employee at the smelter, who had testified that he went on the night shift at 11 o'clock the night of the accident, the accident having occurred about 9 o'clock, and noticed No. 4 bin as to whether there was a plank thereon. After having so testified, it was sought to show that at that time he observed a plank lying across the bin, and held in place with the ore on the north end of it, in substantially the same position as had been testified to by two other witnesses on the part of the defense; their evidence tending to show that the plank was in the same position and held there in the same way at the time of the accident, and there being no evidence tending to show a change of conditions in the meantime. The offer was ruled out, and thereafter, a witness having been called, who testified that he knew there was no change made in the conditions there from the time of the accident to 11 o'clock, an effort was again made to introduce the evidence, but it was again ruled out upon the same ground —that it was incompetent to show the conditions of the bin three hours after the accident.

In view of the fact that the plaintiff's evidence tended to show that there was no plank there, and that one was necessary to brace himself to keep from overbalancing and falling into the bin, the evidence in dispute was competent, and ought to have been admitted. The lapse of time, under the circumstances, was not so great as to justify the court in excluding the evidence

offered; it appearing that no one was working at or about the bin during such time, and it not appearing that there was any change from the conditions existing at the time of the accident. Under the circumstances, there was a presumption, more or less strong, that the conditions, whatever they in fact were, remained the same. It was competent to show that shortly after the accident the same conditions existed.

3     Whether or not the evidence offered was true, and what weight ought to be given it, were matters for the jury and not for the court to determine.

In Chicago v. Dalle, 115 Ill. 386, 5 N. E. 578, where it was claimed a defect in a sidewalk was the cause of the injury, it was held that the condition of the sidewalk shortly before and shortly after the accident might be admitted in evidence as tending to prove its condition at the time of the accident. In the opinion it was said: "It is plain that the liability of the city is to be determined by the condition of the sidewalk at the time the injury was received. If the sidewalk was then in a good and safe condition for persons to travel over, the city would not be liable, but if, on the other hand, the sidewalk was then out of repair and dangerous to travel upon, the city might be liable. But in passing upon the relevancy of the evidence it is not required that it should, of itself, absolutely prove a case; but the question is whether it tends to prove the fact or facts for which it is offered. If it does, then the evidence may be competent for the consideration of the jury. Here the question at issue was the condition of the sidewalk when the plaintiff was injured, and the best evidence would be proof of its condition immediately preceding the accident; but at the same time it was competent to prove the condition of the sidewalk a few days before and a few days after the accident, as tending to establish its condition at the time of the accident."

So, in Mackie v. Railroad, 54 Iowa 540, 6 N. W. 723, the court held that evidence of the condition of a defective gate, two or three days after the accident,

was not improper. It was said: "A witness was permitted, against defendant's objection, to show the condition of the gate two or three days after the accident. It was not shown that its condition was different as to security from what it was at the time of the accident. Its condition, in the absence of such proof, would be presumed to have remained unchanged." ‾McCulloch v. Dobson, 133 N. Y. 114, 30 N. E. 641; Laplante v. Cotton Mills, 165 Mass. 487, 43 N. E. 294; Railroad Co. v. Eubanks, 3 S. W. (Ark.) 808; Nisbet v. Town of Garner, 1 L. R. A. (Iowa) 152, 9 Am. St. 486, 39 N. W. 516; Erickson v. Barber, 83 Iowa 367, 49 N. W. 838.

We do not regard it important to decide the other questions presented on this appeal, since upon another trial they may not again arise.

The judgment must be reversed, with costs, and the cause remanded, with directions to the court below to grant a new trial. It is so ordered.

BASKIN, C. J., concurs.

McCARTY, J. (dissenting).—I am unable to concur with my Brethren in the conclusions reached in the foregoing opinion. One of the grounds upon which plaintiff bases his right to recover in this action is the alleged negligence of the defendant company in failing "to provide for said place of work and for said premises proper and sufficient light, or for the purpose of said work and for the safety of the plaintiff in the performance of his work; that by reason of such neglect to provide a reasonably safe place for plaintiff in which to perform his work, and by reason of the failure and neglect to sufficiently and properly light said place and premises, plaintiff, while in the performance of his duties, fell from said platform into said bin, and into one of the chutes thereof." In support of this allegation plaintiff introduced testimony which tended to show that the bin in which he was working, on the evening of the accident, "punching down ore," was lighted by two stationary lamps only, one of which was attached to a

post about nine feet east from the southeast corner of bin No. 4, and was elevated so that it stood about five or six feet higher than the top of said bin, and that about nine or ten feet north from this light was the other lamp, the light of which was partially obstructed by a post which stood between it and the bin. Plaintiff himself testified in part as follows respecting the condition of the lights: ''In the daytime a man could see, but this night the lights were not bright. They were dim and dark, and down in the bottom, where I had to put my rod this time, I couldn't see the ore at all. There was no light at all down there.'' The witness Wright testified that at the time of the accident he was, and for fourteen months prior thereto had been, at work for defendant company in its electrical department; that on the evening referred to he was directed to examine and repair the lamp in the vicinity of where plaintiff was at work; that he remembered seeing two lamps, and that the one about nine or ten feet from the southeast corner of the bin was out of repair; that the light it was producing was only about one-half of its capacity; and that he applied to the foreman for material with which to repair it, but was told by him to let it go. His testimony with reference to the two lamps mentioned, and the extent and quantity of light they were furnishing at the time, is in part as follows: ''Q. You may state whether or not there was any light that would throw light upon the bottom of the bin that would come from the north lamp on that night. A. Not the one I just described. Q. Now you may state what, if any, light would come to the bottom or lower part of this bin on that night from this defective light on the south. A. Well, there would be some light to the bin, but not much.'' Thereupon the following question, the one referred to in the opinion of Mr. Justice BARTCH, was asked the witness: ''Would that be sufficient light to the bin to enable one punching ore down to see anything about what was in the bottom or middle of the bin? A. It would not.''

The evidence introduced by defendant company tended to show that the room in which the ore bins were situated was lighted by ''a series of five electrical lights arranged in a circuit, from ten to sixty feet apart;'' that one of these lights was adjustable, and was mainly used for the purpose of furnishing additional light at the bins when the work of ''punching down ore'' was in progress, and was placed at the particular bin in which the work was being performed; and that, at the time of the accident, was hanging in the vicinity of bin No. 4, the one at which plaintiff was at work, and was so adjusted as to light up the entire bin. Defendant, at the time of the trial, did not claim that the two stationary lamps referred to by Wright in his testimony were so arranged as to produce sufficient light at the point where plaintiff was at work to enable him to see the ore in the bottom or middle of the bin, nor did it try the case on that theory. This is evident from the character of the questions asked, and the facts elicited from Wright by defendant's counsel, on cross-examination, respecting the location and condition of the lamp described by Wright as being near the southeast corner of the bin. The following is a fair sample of the cross-examination referred to: ''Q. Now, don't you know that that light could not by any possibility reach the bottom of that bin; that it would strike the side of the bin here, and would be deflected, or would be prevented from reaching the bottom of the bin by this north side of that, even if it were burning full candle power? That is true, isn't it? A. That is my judgment. Q. That light was never intended to light up the bottom of the bin, was it? (Objected to as not cross-examination.) Court: He may answer the question. Q. I say a light, the light you have described, never was intended to light the bottom of the bin? A. That is a question I can't answer, because I don't know. Q. It wouldn't light it, would it? A. Don't look as though it would. Q. Not if it were burning full candle power? A. No, sir. Q. If you had been undertaking to light the bot-

tom of that bin, you would have suspended a lamp over it, wouldn't you? How would you have lighted the bottom of the bin without suspending a lamp over it? A. I don't see how you could light the bottom of the bin with this track over here. I should have put a light up here; somewhere over here. Q. At any rate, it is true, is it not, that with those various things, with the beam, and the railroad track, and the side of this ore bin presented to the light, that light never by any possibility could light up the bottom of that bin. unless it was put in the place you have indicated? A. It might be put . . . somewhere else.''

In regard to the effect the light from the light described by Wright as being north from the one referred to in the foregoing cross-examination had upon the bin where the plaintiff was at work, it was shown by the testimony of defendant's witnesses that because of certain obstructions between the bin and the lamp the light produced could not reach the bin. James Crellin, the foreman under whom plaintiff was working at the time he was injured, was called as a witness by defendant, and on cross-examination was asked the following question on this point: ''Q. It is true that that light would be in such a position that this bank of ore would practically obscure it from No. 4 [referring to bin at which plaintiff was at work]? A. Yes, sir.'' Joseph Alsop, another of defendant's witnesses, testified respecting this same matter as follows: ''Q. I will say, did this arrangement here that has been, I think, denominated a 'lime rock bin,' and the pile of ore that was on the outside of it, come within—between the bin 4 and this light here, between 10 and 11 [referring to bins Nos. 10 and 11]? A. Yes, sir. Q. It interfered with it? A. Yes, sir. Q. And it didn't light up bin 4 at all did it? A. That light didn't light up bin 4.''

Now the testimony of Wright to which objection is made referred only to the extent and effect of the light furnished by the two last-mentioned lamps, and the record shows that these lamps were so situated with refer-

ence to the location of the bin that they did not and could not light the interior of it. Upon this point there is absolutely no conflict in the evidence, and the cross-examination of Wright shows on its face that its object was not for the purpose of discrediting his testimony, wherein he stated that these two lamps did not of themselves furnish "sufficient light to the bin to enable one punching down ore to see anything about what was in the bottom or middle of the bin," but was for the purpose of emphasizing and affirming what he had stated on this point. That such was the intent is apparent from the fact that defendant's counsel, in the cross-examination referred to, intentionally drew out much additional matter, for the purpose, as shown by the form and phraseology of the questions asked, of showing that the physical conditions around about the bin were such that there was no possibility of Wright being mistaken as to the effect the light referred to in his testimony had upon the bottom of the bin. The defendant, having thus in effect admitted the truth of the testimony upon which error is predicated, ought not to be heard to complain of its admission on the ground that it was "a question for the jury to determine," especially so in view of the fact that defendant did not claim during the trial of the case, and does not contend here, that the two lamps described by Wright were so located as to light up the bin in which plaintiff was at work. As hereinbefore stated, the theory of defendant, as shown by the record, was that there were five lighted lamps in the room (including the two mentioned in Wright's testimony), one of which was adjustable, and at the time of the accident was hanging immediately over bin No. 4, and that this lamp, in connection with the others, furnished an abundance of light on the night in question.

Even though it be conceded that the testimony under consideration was upon one of the controverted questions in the case, yet under the great weight of authority it was admissible. Wright was sent there to examine, and if need be repair, the lamps. He "walked over the

surface of the bin,'' and had every opportunity of understanding the situation.  His attention was necessarily directed to the condition of the lamps and amount of light furnished by them, because he was sent there expressly for that purpose.  He testified that the lamp which furnished the greater amount of light to the bin was out of repair, and that the quantity or power of the light was not more than one-half of the capacity of the lamp, and that because of this ''there would be some light to the bin, but not much.''  It is plain that the witness could not, by a mere recital of the conditions as he observed them, explain to the jury just how much light the lamps mentioned in his testimony produced at the bin, or how light or how dark it was in the interior thereof.  Therefore, under the well-settled rule that a witness may state the result of his observations when the subject-matter about which he is testifying is of such a character that it can not be accurately communicated by words to others, the testimony was admissible.

In the case of Commonwealth v. Sturtivant, 117 Mass. 122, 19 Am. Rep. 401, the rule which is elaborately discussed in the body of the opinion is tersely stated and summed up in the syllabus as follows: ''Common observers, having special opportunities for observation, may testify to their opinions or conclusions of fact, although they are not experts, if the subject-matter to which the testimony related cannot be reproduced or described to the jury precisely as it appeared to the witness at the time, and the facts upon which the witness is called to express his opinion are such as men in general are capable of comprehending.''  In Abbot's Trial Ev. (2 Ed.), p. 729, the author says: ''Facts discernible by judgment or estimate, but not requiring special knowledge or skill, are not regarded as matters of opinion within these rules.  Hence any person of ordinary knowledge or experience may testify to his judgment of the speed of a train or vehicle, or whether a person looked sick or well, and the like.''  Gillet on Indirect and Collateral Ev., sec. 213; Case v. Perew, 46 Hun 57.  In

2 Jones on Evidence, p. 362, the author says: "It often happens that it is impossible for a witness to detail all the pertinent facts in such a manner as to enable the jury to form a conclusion without the opinion of the witness. Indeed, the witness may not be able to separate the facts and indications from which he has formed a conclusion from the conclusion itself. From many of the illustrations given below it will appear that, from necessity of the case, the opinions of ordinary witnesses must often be received. For example, the opinion of those not experts may be received as to the disposition and temper of animals, as to matters of color, weight, quantity, light, darkness, the state of the weather, and similar facts."

James Crellin, one of defendant's witnesses, having testified on his direct examination respecting the number and efficiency of the lights in the vicinity of bin No. 4, one of which lights he testified was adjustable, and which "we [referring to himself and plaintiff] took where they were going to do work," and that "the extension light was extended right over bin No. 4," was cross-examined in part by plaintiff as follows: "Q. What was that light [referring to the extension light] brought to No. 4 bin for? A. Just to have more light to work there by. Q. Now, Mr. Crellin, again, you recognized at that time that the light was necessary for this bin, did you? A. Not perfectly necessary. No, sir. I took it over there because two lights are better than one, and you know that. Q. Didn't take it over because you recognized it was necessary? A. We needed it if we had to go into the bin, and certainly it is necessary—two lights are better than one. . . . Q. Do you say a light over bin No. 4 was necessary for the safety of the men or a man working there? A. It would not be perfectly necessary, but it would be more safe to have two lights than it would be to have one." This last question was objected to on the ground that it called for the conclusion of the witness, and was one of the questions for the jury to determine. Defendant introduced evidence

which showed that the work in question was attended with some danger. James Nelson, one of the defendant's witnesses, who was also foreman in defendant's sampling mill, where plaintiff was at work when injured, testified in part as follows: "Of course, a fellow wouldn't do to have his eyes shut around there. It was more dangerous than it was walking around on the bare floor, walking over those beams."

Crellin was the foreman and representative of defendant company, and as such had the control and management of the work in which plaintiff was engaged, and as such foreman it was not only his duty, or rather that of defendant company acting through him, to provide plaintiff a reasonably safe place in which to perform the work required of him, but to use ordinary care in keeping it in a reasonably safe condition. The situation there being one of danger, as shown by defendant's evidence, and Crellin having testified on direct examination respecting the number, location, and efficiency of the lamps, and that he had taken the extension or adjustable light from the bin in which he and the plaintiff had been at work that same afternoon, and hung it over bin No. 4, it was not only plaintiff's right to cross-examine him respecting the things he actually did, but it was within the discretionary power of the court to permit plaintiff to interrogate him respecting his object and reason for doing certain things, especially in view of the fact that he was a "willing witness" for defendant and adverse to plaintiff. Jones on Evidence, sec. 826.

There is another reason why this testimony was admissible. The acts of Crellin in the premises, on principle and in law, were the acts of defendant company, and the plaintiff was entitled to this evidence for the purpose of showing that the place was one of danger, and that the defendant company, through its foreman, Crellin knew of such danger, and understood and appreciated the necessity of more than one lamp in the immediate vicinity of bin No. 4, in order that the work might be

28 Utah—8

performed without exposing plaintiff to extraordinary and unnecessary hazards and dangers. In other words, the knowledge of Crellin in reference to these matters was knowledge to his principal. And again, as I have already stated and pointed out, the theory upon which the case was tried, both by plaintiff and defendant, was that the stationary lamp hereinbefore mentioned did not light up the interior of bin No. 4 after dark, and that additional light to that furnished by this stationary lamp was necessary at that point; the defendant claiming that on the evening in question the adjustable lamp was hanging over bin No. 4 and furnished an abundance of light whereas the claim and theory of plaintiff was that the only light at said bin was that produced by the two stationary lamps mentioned in Wright's testimony. Hence, under this theory of the case, the testimony was unimportant, except only so far as it tended to bring home to defendant knowledge of the conditions as they existed at that time, and the necessity of additional light to that furnished by the stationary lamps.

The next error alleged is the exclusion of Avery's testimony with reference to the plank which other witnesses for defendant had testified to having seen lying across bin No. 4 just prior to the accident. It appears from the record that the plank in question was not a part of the bin; that is, it was not a fixture of or permanently attached to the bin. Crellin, defendant's principal witness testified on his direct examination with reference to its character as follows: "Q. Now, do you know whether or not, in addition to this plank and ladder, there were any other loose material about the floor? A. You mean plank? Q. I mean plank. A. Yes, sir; there were several pieces of plank lying around there." In fact the record shows that there was but little more permanency respecting the location of the plank than there was to the pick, shovels, and other tools with which the work there was performed.

Under these circumstances, in order to entitle appellant to Avery's testimony that he saw a plank lying

across bin No. 4 two or three hours after the accident occurred, it was incumbent upon it to show that the conditions at the bin were the same when Avery went to work as they were when plaintiff was hurt. True, Crellin made the sweeping statement that in the meantime no changes had taken place; but the record shows that he left the premises immediately after the accident, and accompanied the plaintiff to his home, a distance of about two miles from the mill, stayed with him from one-half to three-quarters of an hour, and returned to the smelter about ten minutes before the 11 o'clock shift went to work. Therefore, according to his own testimony, he was not in a position to know what took place at the bin between the time he left with Meyers at 8 or 9 o'clock and his return at 11 o'clock p. m. And the record shows that in the meantime ore was run into bin No. 4, and that conditions to some extent had changed. Under these circumstances and conditions I do not think it was an abuse of discretion for the court to exclude Avery's testimony. If the plank had been a fixture and attached to the bin, an entirely different rule would govern, but the record shows that it and other loose plank were used, among other things four-foot boards, and were frequently moved from one bin to another.

I am of the opinion that the judgment of the trial court should be affirmed.