## EVANSEN v. GRANDE RONDE LUMBER CO.

(149 Pac. 1035.)

**Master and Servant—Employers' Liability Act—Prior Statute.**

1. Where the administrator of a servant of a lumber company, which operated a railroad, killed in the course of his employment on. defendant's train, sued to recover $7,500 damages for the death, the provisions of the Employers' Liability Act (Laws 1911, p. 16), were thereby waived, and reliance placed upon the statute in force prior to such act, Section 6946, L. O. L., regulating the liability of railroad companies for injury to employees, thus rendering the defenses of assumption of risk and negligence of fellow-servant, permissible under such statute, available to the defendant employer.

**Evidence—Opinion—Expert—Logging Company Employee.**

2. The superintendent of a logging company's railway was competent to testify whether it was necessary for members of the crew of a logging train to travel over the cars when in motion in the discharge of their duties, since men in railroad service may express opinions upon questions in relation thereto, involving matters not within the knowledge of ordinary jurors.

> [As to when the opinions of nonexperts are admissible, see note in 30 Am. St. Rep. 38.]

**Appeal and Error—Harmless Error—Evidence—Necessary Methods of Work.**

3. In an action against a logging company, which operated a logging railroad, for the death of its servant on a train, where defendant's superintendent was allowed to testify that it was not necessary for any of the train crew to travel over the cars while in motion, the admission of such opinion evidence was not prejudicial to plaintiff, since the fact that the service, being rendered by the servant in traveling over the train while in motion, could have been performed in a different manner when the train was at a standstill, did not disprove that such servant followed the usual and ordinary course of his employment in so doing.

77 Or.—1           (1)

**Master and Servant—Death of Servant—Evidence—Negative Testimony.**

4. In an action against a logging company, operator of a railroad, for the death of a servant through the breaking of a chain, securing logs to a car in motion, testimony of defendant's logging and railway superintendent that, during the 12 years he had been with defendant, he had never known a chain to break, except on that one occasion, was not inadmissible under the rule that the negative testimony of a witness that he did not see an occurrence ordinarily affords no evidence, since such rule has no application to one whose duty, as superintendent of a business or department thereof, is to observe and note the happening of events tending to promote or retard work.

**Appeal and Error—Presumptions—Qualification of Expert.**

5. In an action against an employer for death of a servant by the breaking of a chain securing logs on a train, where the defendant logging company's superintendent was allowed to give his opinion in evidence as to the strength of wire with which broken chains were repaired, as compared with the strength of a link, and where, on appeal, the bill of exceptions set out no testimony as to the witness' qualifications as an expert on the point, except that he had had many years' experience as defendant's superintendent, the court would assume that he was qualified, and that the jurors had no general knowledge of the subject testified to.

**Master and Servant—Duty to Servant—Safe Appliances—Long Use of Implement.**

6. An appliance, such as a chain used in securing logs to a railroad car, that has been used for a long time in safety, may be continued in use without imputation of want of care to the employer thereby, if such appliance has not become obviously dangerous.

**Master and Servant—Duty to Servant—Inspection of Appliance.**

7. The purchase, by an employer, of chains to be used by his servants to secure logs to a railroad car, from a reputable manufacturer of chains for such purpose, did not relieve the employer of his duty to the servants of inspection by a competent person as to the fitness and safety of the articles for the use.

[As to duty of master to inspect common or simple tools, see note in Ann. Cas. 1912A, 1004.]

**Master and Servant—Injuries to Servant—Sufficiency of Evidence.**

8. In an action for death of an employee on a logging company's train, evidence *held* sufficient to support finding that company was not negligent as charged.

**Death—Action—Party Entitled to Sue—Administrator.**

9. The administrator of a deceased employee is incompetent to maintain an action against the employer for damages, for the death, when it is alleged to have been caused by such employer's negligence.

# From Union: John W. Knowles, Judge.

In Banc.   Statement by MR. CHIEF JUSTICE MOORE.

This is an action by P. Evansen, as administrator of the estate of Andrew Brodreskift, deceased, against the Grande Ronde Lumber Company, a corporation, to recover damages resulting from the death of the plaintiff's intestate, which it is alleged was caused by the defendant's negligence in that there was a failure to provide a safe place in which brakemen, employed on a logging train, were required to perform the services demanded of them, in not suitably inspecting the cars, chains, fasteners and appliances used in connection with the train, in not keeping instrumentalities in good repair, and in not using sufficient chains upon cars to hold logs safely thereon, in consequence of which Andrew Brodreskift was thrown from a car of logs and instantly killed, to the damage of his estate in the sum of $7,500. The answer denied the negligence charged, and averred in effect that the deceased was an experienced brakeman who knew and assumed the dangers incident to his employment; that the injury resulted from an unavoidable accident, unless it was caused by the contributory negligence of Brodreskift; and that, if there was any carelessness on the part of anyone other than the deceased, it was the negligence of fellow-servants. A demurrer to the answer on the ground that it did not state facts sufficient to constitute a defense was overruled, whereupon the reply put in issue the averments of new matter in the answer. Based upon the issues thus formed, the cause was tried, resulting in a verdict and judgment for the defendant, and the plaintiff appeals.   AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. George T. Cochran* and *Mr. Colon R. Eberhard.*

For respondent there was a brief and an oral argument by *Mr. Charles H. Finn.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. It is maintained that an error was committed in overruling the demurrer. The defenses interposed are allowable, unless the Employer's Liability Act has eliminated them. When an action is brought by an administrator to recover damages for the death of his intestate, alleged to have been caused by the defendant's negligence, and the amount of the judgment demanded is limited to $7,500, it is believed that the provisions of the Employer's Liability Act are thereby waived, and reliance is placed upon the statute as it existed prior to the enactment referred to, thus rendering the cause of action liable to the defenses set up herein: Section 6946, L. O. L. No error was committed as alleged.

The evidence shows that the defendant owns at Perry, Oregon, a sawmill, where it manufactures lumber from logs which are cut in the Blue Mountains and transported over the defendant's railway to Hilgard, and thence over the line of the Oregon-Washington Railway & Navigation Company to the mill. The grade of the defendant's railway is quite steep in some places, and, in order safely to transport logs, the flat cars used for that purpose contain air-brakes that are operated by the engineer in charge of the locomotive. Each car has a supplemental reservoir, called a retainer, which when filled with air from the engine, will maintain adequate pressure upon the brakes from four to eight minutes. The vehicles used for hauling logs are flat cars usually longer than the load transported. Near each end of the cars are placed iron cross-bunk-

ers, in each end of which are inserted short iron stand-
ards. A derrick is generally employed to load on
cars logs, only two of which, if large, are placed in the
lower course, but, if smaller logs are taken, three are
then used. Across the lower layer of logs on each car
extend chains, called wrappers, that are fastened to
clevises in the iron standards, and wooden wedges are
driven beneath the outer logs in order to tighten the
wrappers so as to keep the load from slipping on the
deck of the cars. When reaching the level, after de-
scending the mountains with a train-load of logs, it
was occasionally the practice of brakemen to pass over
cars and turn down the retainers, thereby allowing the
compressed air to escape. On December 22, 1913, as
a train loaded with logs, having the locomotive in front
backing, had nearly reached the level, the engineer,
glancing back, saw Brodreskift walking toward him
on the top of logs, and soon thereafter the engineer,
again looking in that direction, observed logs falling,
whereupon he immediately halted the train, and em-
ployees going back found Brodreskift lying on the
ground, having sustained a fracture of the base of the
skull, from the effects of which he instantly died. It
was further discovered that the wrapping chain on the
front end of a car had been broken about three links
from the standard on the right side, and that the rear
standard on the left side was also broken. Whether
Brodreskift fell from the car, or jumped, or was
thrown off, is not known. When found, he was lying
with his head toward the car, and about six feet from
it. No fallen log was nearer than two feet from him.
His hat, however, was found on the ground among the
logs. The testimony of plaintiff's witnesses tended
to show that, at the time Brodreskift lost his life, he

was employed by the defendant as a brakeman upon its logging train, and was performing his required duties in going over the loaded cars while in motion to release the retainers, thereby preventing the train from being halted on the level, when the wrapping chain broke, and he was killed.

2, 3. Ed Bean, the superintendent of the defendant's logging department and railway, testified that he had charge of this branch of the work; that he was absent from December 1, 1913, to February 1, 1914, but before leaving he had issued verbal rules and instructions to the employees engaged in the train service, which rules were in effect when he returned; that these instructions were obeyed; and that it was not the duty of any of the train crew to travel over the cars while in motion. In this connection he was asked: "State whether or not it was necessary for them [referring to members of the train crew] to travel over the cars when they were in motion." An objection, interposed to this command on the ground that the answer sought was incompetent, irrelevant and immaterial, was overruled, and an exception allowed, whereupon the witness answered, "It was not"; and it is contended that an error was thereby committed.

It is argued that the question to be considered was whether or not it was the duty of the deceased to pass over loaded cars when they were in motion, and that in permitting Bean, who did not see the accident, to state upon oath that there was no necessity for a brakeman to travel over moving cars loaded with logs, was allowing the witness to express an opinion upon a matter not requiring any particular skill, thereby disclosing the competency of the jury to determine the matter. Did the wrapper chain break by reason of the

defendant's negligence? was the principal issue to be determined. After the happening of almost any accident, alleged to have been caused by negligence, it is possible for interested persons to testify that some other method of performing the work in which the servant was engaged when he was hurt could have been pursued; and hence it was unnecessary for him to have taken the position which he occupied at the time he was injured. It is manifest from the testimony that in order to prevent the train from coming to a standstill when it reached the level, after descending the mountain, it was expedient, at least, that the retainers should be turned down when the cars were in motion. "Necessity," as the term was used in the question complained of, evidently meant an inquiry as to whether or not it was indispensable that the retainers should be turned down when the cars were in motion, or whether some other method could have been adopted or some different condition of the train selected where the pressure upon the brakes could have been safely released. It is possible that such service could have been performed in a manner different from that pursued by Brodreskift, but because this might have been done does not disprove the fact that he followed the usual and ordinary course in discharging a duty.

Men engaged in the railroad service are experts in that branch of transportation, and may express opinions upon questions in relation thereto when the inquiry involves matters not within the knowledge of ordinary jurors: Lawson, Ex. Ev. (2 ed.), p. 91.

In *Galveston etc. R. Co.* v. *Bohan* (Tex. Civ. App.), 47 S. W. 1052, 1053, it was decided that a witness who was an expert in the case of railroad tracks, and had

had many years' experience as section foreman, was competent to testify as to the necessity of a track walker in a particular freight-yard, although he had not worked in such yard within two years. In deciding that case, Mr. Chief Justice Garrett remarks:

"The engineer, fireman, brakeman, conductor, section foreman and experienced men in other departments may testify as to what is usual, customary or necessary to be done in their special lines of work."

In *Nowell* v. *Wright,* 3 Allen (Mass.), 166 (80 Am. Dec. 62), it was ruled that, in receiving the opinion of tenders of drawbridges as to the necessity of keeping the gates of the bridge shut and hanging out lanterns while the draw was open in the night-time, the trial court committed error.

In *Chicago etc. R. Co.* v. *Cummings,* 24 Ind. App. 192 (53 N. E. 1026), which was an action to recover damages caused by the defendant's alleged negligence in unnecessarily sounding a locomotive whistle, it was held that the opinion of an engineer that the blowing of a whistle at the time and place mentioned was unnecessary was incompetent.

In *Lane* v. *New York etc. R. Co.,* 93 App. Div. 40 (86 N. Y. Supp. 947), in allowing an expert witness to testify that rules suggested by him were necessary, it was determined that an error had been committed, and that it was competent for the jury, when all the facts and circumstances bearing upon the situation had been placed before them, to determine the question for themselves.

In *New York Electric Equipment Co.* v. *Blair,* 79 Fed. 896 (25 C. C. A. 216), which was an action to recover damages alleged to have been caused by the defendant's negligence in hoisting pipes, it was con-

cluded not to be competent for a witness, called as an
expert, to state whether it was necessary, in the proper
performance of duty in hoisting pipe, that certain
specified precautions should be taken, since the ques-
tion was one which the jury could determine upon a
statement of the facts. To the same effect, see, also,
*Meyers* v. *Highland M. Co.*, 28 Utah, 96 (77 Pac. 347).

It is quite probable that, if directly asked, Mr. Bean
could have said the retainers might have been turned
down when the train came to a stop for that purpose;
but, however this may be, the witness, as superintend-
ent of the defendant's railway and logging department,
was undoubtedly qualified to express an opinion, and,
having testified that it was unnecessary for the brake-
man to pass over the loaded cars when in motion, it is
not believed that the answer to the question objected
to prejudiced the plaintiff's rights.

4. The witness Bean was permitted, over objection
and exception, to testify that during the 12 years he
had been employed by the defendant he had never
known a wrapper chain to be broken while a train of
cars loaded with logs was descending the mountains,
except in the particular instance when Brodreskift was
injured, and it is insisted that an error was thereby
committed. It is argued that Bean was absent from
the logging camp about three months during which
time the injury complained of occurred; that it does
not appear that he accompanied the train on each trip
that was made; and that this species of proof is an at-
tempt to make the superintendent's lack of knowledge
positive evidence of due care. It must be conceded
that negative testimony, if permitted to be given by a
person who did not perceive a fact, the existence of
which is the subject of judicial investigation, ordinar-

ily affords no evidence that the incident did not occur as alleged. The testimony of a single reputable witness, who states that he saw a crime committed by the person charged therewith, will outweigh the testimony of a multitude, who may assert that they did not see the person charged perpetrate the offense. This rule of evidence, however, can, upon principle, have no application to a person whose duty, as superintendent of a business enterprise or a department thereof, is to observe and note the happening of events which tend to promote or retard the work in which he is engaged, in order that he may guard against a repetition of the incidents which hinder the operation.

It was the particular province of Mr. Bean to know whether or not a wrapper chain had ever been broken when a loaded train was descending the mountain, and his testimony on that subject was proper, assuming, as we must, that ample opportunity was given for cross-examination as to his means of acquiring the information of which he testified.

5. The testimony received tended to show that, in loading logs after the lower layer had been placed on the cars and secured by wrappers, other logs put on the top of the load would be dropped some distance, occasionally breaking the chains, which fractures were temporarily repaired at the logging camps by improvised links made of baling wire. In referring to such repairs, Mr. Bean was asked: "And what was the relative strength of that mass of baling wire between the links in comparison with the link?" An objection to the inquiry made on the ground that it was incompetent, irrelevant and immaterial, and that the witness was not shown to be qualified to answer the question, was overruled, and the superintendent replied: "It

made it stronger than the link.'' It is maintained that the answer given interfered with the province of the jury, and was erroneous.

The bill of exceptions does not purport to set out any of the testimony tending to show what Mr. Bean's qualifications as an expert were, except that he had many years' experience as the defendant's superintendent. From this circumstance alone, and in the absence of any testimony on the subject, it will be taken for granted that he was competent and qualified to state the relative strength of the wire link, and that ordinary jurors had no general knowledge of the subject.

6. George Stoddard, the defendant's general manager, in referring to the chains used as wrappers, was permitted, over objection and exception, in answer to the question, ''Where did you get them?'' to say:

''They come through the Marshall-Wells Hardware Company of Portland.

''Q. What are these chains called in commerce?

''A. American steel-proof test-proof chains.

''Q. Do you know whether they are blacksmith-made or factory-made?

''A. I suppose factory-made. * *

''Q. Now, then, you may state from your knowledge whether these chains come from a reputable factory for making chains of that character.

''A. Yes, they do.''

Based on this and other testimony the court charged the jury as follows:

''I instruct you that it is the master's duty to exercise reasonable care only. It is not sufficient to show that defendant might have had better or safer machinery or methods than the ones it uses, nor was he bound to adopt every latest improvement. It is a well-settled rule that, when an appliance has been in daily use

for a long time and proved safe, (and) its use may continue without the imputation of want of care. So that if you find from the testimony that the chains used by defendant in this case in binding its logs on its cars broke at time of such accident, and that the same caused the death of Andrew Brodreskift, and you further find that such chain was purchased of a reputable manufacturer, manufactured for the purposes defendant used same, and that such breakage was from some hidden defect which was undiscoverable by ordinary inspection, then the defendant was not guilty of negligence, and your verdict should be for defendant."

An exception having been taken to this instruction, it is contended that an error was committed in giving it. An examination of the language employed will show that if the word "and," indicated by parentheses, be retained, a part of the sentence was evidently omitted by the official reporter. If, however, the stenographer inadvertently included that word the remaining part of that sentence, "its use may continue without the imputation of want of care," as a declaration of a legal principle, is not universally true. A chain may have been in daily use for a long time and proved safe, and yet such employment so impaired its strength that a continuation of the use would become extremely dangerous. The idea undertaken to be expressed by the language referred to was evidently obtained from the case of *Sappenfield* v. *Main St. etc. R. R. Co.,* 91 Cal. 48, 57 (27 Pac. 590, 592), where it is said:

"It is a well-settled rule that when an appliance or machine, not obviously dangerous, has been in daily use for a long time, and has uniformly proved safe and efficient, its use may be continued without the imputation of imprudence or carelessness."

The rule thus referred to may be controlling in some cases, but the omission from the instruction challenged of the phrase ''not obviously dangerous,'' as set forth in a part of the opinion quoted, renders the charge complained of inapplicable.   It is possible that a careful examination of the links would have disclosed that use had not worn them, and for that reason the chain was not obviously dangerous.   But, however this may be, the part of the charge to which attention has been called did not correctly state the law.

7. The purchase of a chain from a reputable manufacturer who makes such instrumentalities for the purpose for which it was used by the defendant did not avoid the necessity of a careful examination of each link by some person competent to judge of its fitness for the utmost strain that was likely to be placed upon the chain: *Morton* v. *Detroit etc. R. Co.,* 81 Mich. 423, 433 (46 N. W. 111).

The instruction complained of, and many other alleged errors that have been assigned, have been carefully considered; but when viewed in connection with the entire testimony, instructions, etc., which are attached to and made a part of the bill of exceptions, it is believed that no prejudicial error was committed at the trial.

8. No person saw Andrew Brodreskift when he was hurt, and, as he instantly died, it was impossible for plaintiff's counsel accurately to determine the proximate cause of his injury.   A careful examination of the entire testimony convinces us that, notwithstanding the matters referred to as alleged errors, the jury properly determined that the defendant was not negligent, as averred in the complaint.

9. Since this opinion was written, the case of *Niemi* v. *Stanley Smith Lumber Co., post,* p. 221 (149 Pac. 1033), has been decided on rehearing, holding an administrator an incompetent party to maintain an action to recover damages for the death of his intestate, when alleged to have been caused by the negligence of his employer.

Observing the rule established in that case, we conclude that the plaintiff herein was not entitled to maintain this action, and as to him the judgment must be and is affirmed.                                    AFFIRMED.