ROGER P. CUSHING, administrator, *vs.* G. W. & F. SMITH
IRON COMPANY.

Suffolk.    November 13, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's Liability.  *Practice, Civil.*

The fact that a chain which in good condition would sustain a load of thirty-five
hundred pounds broke under a load of only eighteen hundred pounds when there
was no sudden or unusual strain upon it warrants a finding that the chain was
defective.

In an action by an administrator for the death and conscious suffering of his intes-
tate while in the employ of the defendant caused by an iron column falling
upon him owing to the breaking of a defective link of a chain by which it was
being hoisted, it is no defence that there were on the spot other chains fur-
nished by the defendant which were suitable and that the chain which broke
was selected by a fellow servant of the plaintiff's intestate, if this chain when
in proper condition would have been suitable and the fellow servant using such
care as reasonably might be expected of him did not discern the defect.

If a trial judge makes a general ruling that a plaintiff cannot recover and orders a
verdict for the defendant, for which he gives a wrong reason, the plaintiff is not
entitled to a new trial unless he can show some ground upon which his case
should have been submitted to the jury.

In an action by an administrator for the death and conscious suffering of his intes-
tate while in the employ of the defendant caused by an iron column falling
upon him owing to the breaking of a defective link of a chain by which it was
being hoisted, there was evidence that the chain was part of a longer one which
when purchased by the defendant was in sound condition, that the longer chain
was cut up by the defendant and this part of it was fitted for use by adding to
it a large link, in doing which the link which broke had been opened and after
the large link had been inserted had been closed by a weld, that the weld was
defective by reason of the carelessness of the smith who made it, and that the
breaking of the link was due to that defect.  *Held,* that this was evidence of
the defendant's negligence to be submitted to the jury; and that if the negli-
gence in making the weld was that of a fellow servant of the plaintiff's intestate
this did not relieve the defendant from liability.

TORT, by the administrator of the estate of George H. Hayes,
for causing the death and conscious suffering of the plaintiff's in-
testate while in the employ of the defendant as a teamster, with
three counts, the first alleging a defect in the ways, works or
machinery of the defendant, the second alleging negligence of a
superintendent, and the third at common law alleging a failure
to furnish and keep in repair suitable machinery and appliances

for the work in which the intestate was employed. Writ dated December 15, 1902.

In the Superior Court the case was tried before *Bond*, J. At the close of the plaintiff's evidence the defendant asked the judge to rule that upon all the evidence the plaintiff was not entitled to recover. The judge ruled as requested, stating that it might be assumed that the plaintiff's intestate was in the exercise of due care, there being no controversy about it, and concluding his instructions to the jury as follows: "Where a workman is injured by the act of a fellow workman the master is never liable, and in this case if there was any one whose negligence resulted in this accident caused by the picking out of this chain, it was a fellow servant. So you may return a verdict for the defendant and the matter may go to another court and it can be determined whether my ruling is right about it."

The jury returned a verdict for the defendant as directed; and the plaintiff alleged exceptions.

*A. P. Stone*, for the plaintiff.

*W. I. Badger*, (*P. G. Carleton* with him,) for the defendant.

HAMMOND, J. Hayes, the intestate, was an employee of the defendant, and while employed in lifting a heavy iron column, was injured by reason of the breaking of the chain supporting the column. No question is made as to his due care.

The only question is whether there was any evidence of the defendant's negligence. All the witnesses testified that the chain was made of links approximately half an inch in diameter, and that a chain of that description in good condition was a proper chain to use in lifting a weight varying from thirty-five hundred to four thousand pounds; that the weight of the column which was actually being lifted when the chain broke was about eighteen hundred pounds, which "was well within the limits of safety." There was also testimony "that at the time the chain broke there was no sudden strain put upon it; that there was apparently no kink in the chain; that nothing else gave way, and that as far as could be seen, the link, which was the link next to the large link at the end of the chain, broke without warning; . . . that this link broke because of a defective weld at one end." The link was broken in two places, in one of which, it was testified, the iron was partially crystallized; but the evidence tended

to show that this break was subsequent to the break at the weld, and was caused by the additional strain put upon the link when the weld parted. The beam had been lifted from the ground and was being swung around by Hayes so that it could be placed upon his team; he had hold of the beam with his hands, no tag rope being used, when the chain broke and he was crushed by the falling beam; and, although conscious for some period of time, he died in three hours after the injury. The work was being done by a gang of three men known as a "riveting gang," with the assistance of Hayes, who was a teamster.

The fact that the chain which in good condition would sustain a load of thirty-five hundred pounds broke under a load of only eighteen hundred pounds when there was no sudden or unusual strain upon it, warrants the conclusion that the chain was defective, and we do not understand the defendant to argue to the contrary.

One ground of the defence is that this chain was selected by a fellow servant of Hayes from a number of chains furnished by the defendant, among which were many suitable to use in hoisting this beam. And the defendant invokes the doctrine that when the master furnishes tools of which some are proper for the work in hand and others are not, he is not answerable to his servant for the negligent selection of an unsuitable tool by a fellow servant; and this was seemingly the ground upon which the trial judge directed a verdict for the defendant. But this doctrine is only one application of the general doctrine that at common law a master is not answerable to a servant for injuries caused by the negligence of a fellow servant; and hence, where the fellow servant in the exercise of such care as reasonably may be expected of him innocently selects a defective tool, the reason for the rule fails and the rule is not applicable. If this chain when in proper condition would have been suitable and the fellow servant, using such care as reasonably might be expected of him as such, did not discern the defect, then there was no negligence upon his part and the defendant is not excused by the fact that there were on the spot other chains furnished by it which were suitable. *Ford* v. *Eastern Bridge & Structural Co.* 193 Mass. 89, and cases there cited. Upon the evidence the question of the due care of the fellow servant who made the selection was

for the jury.   Therefore the ruling that upon the evidence the plaintiff could not recover cannot be sustained upon the ground stated by the trial judge.   But inasmuch as the ruling was general it must stand unless the plaintiff can show some ground upon which his case should have been submitted to the jury.

There was evidence that the defendant "bought the best chains in the market"; that "this chain was probably bought as a whole and was then cut up into pieces; that larger links were forged in at the end, and the shorter chains thus made were then put in various racks about the shop to be used for whatever purpose might be deemed necessary; that nothing further was done with them as far as the care of them was concerned"; and that "the chain was not tested by the defendant . . . after it was purchased, but was supposed to be a tested chain when purchased."   The defendant contends that having purchased its chains of reputable dealers in the open market, which were supposed to be tested, it cannot be held answerable for a latent defect.   In order to see to what extent the defence can rest upon this ground it is necessary to look still further into the evidence.   There was evidence that this chain was a part of a longer chain; that after its purchase by the defendant the large link at the end had been inserted into the link which afterward broke; that to make this insertion the latter had been opened and, the larger link then having been inserted, was closed by a weld; and that all this was done by the defendant.   If that was so, then the defendant was not to be excused by the fact that the chain was sound when it was bought, but was answerable for any negligence in making the weld.   *Haskell* v. *Cape Ann Anchor Works*, 178 Mass. 485.   It was answerable even if the neglect in making the weld was that of a fellow servant; it could not relieve itself of the duty to use care that the chain should be safe by entrusting the work to a fellow servant of Hayes.   The hand of the smith who made the weld was the hand of the defendant.   Upon the evidence the jury might have found that when purchased the longer chain of which the chain in use at the time of the accident was a part was in sound condition; that when the longer chain was cut up and this part was being fitted for use a large link was added to one end of this part; that in doing this the link which broke was opened and

then, after the large link had been inserted, was closed by this weld; that the weld was defective by reason of the carelessness of the smith who made it; and that the breaking of the link was due to that defect. Upon this ground at least, we are of opinion that the plaintiff had the right to go to the jury on the question of the defendant's negligence.

Upon this view of the case it becomes unnecessary to consider whether any other negligence on the part of the defendant is shown.

*Exceptions sustained.*