MICHAEL DOHERTY vs. EDWARD S. BOOTH.

Suffolk.   December 9, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability. *Evidence,* Opinion : experts.

The common law rule, that where a master has provided a sufficient supply of proper temporary appliances for the use of his servants he is not liable for an injury to one of his servants caused by the choice of a defective appliance by another of them, has no application to an action under R. L. c. 106, § 71, by a workman against his employer for injuries caused by the choice or use of a defective appliance by one intrusted with and exercising superintendence.

A stevedore is liable for personal injuries sustained by a longshoreman in his employ by reason of the falling of a staging, when it was being lowered from the side of a ship under the direction of his superintendent, owing to the breaking of one of the rope slings by which the staging was suspended, if the accident was caused either by the employer's furnishing a defective rope, or by a rope which was sound when furnished having become defective by age or wear under such circumstances that the employer by the exercise of reasonable diligence would have known its condition.

In an action for personal injuries caused by the breaking of a rope, if the plaintiff shows that the rope when in good condition was of ample strength to have sustained the load which was upon it at the time it broke, and nothing further appears in regard to the condition of the rope, the jury from their common experience can find that the accident would not have happened unless the rope in some way had become unsound.

In an action by a longshoreman against a stevedore by whom he was employed, for personal injuries caused by the falling of a staging which was being lowered from the side of a ship where it had been hoisted into position about five hours earlier, it appeared that the work of placing the staging in position on the ship and of removing it at the end of the day was done under the personal supervision - of one who could have been found to have been acting as a superintendent of the defendant, that the falling of the staging was due to the breaking of one of the rope slings by which it was suspended while being lowered, that, after the staging had been hoisted into place five hours earlier, this rope was unhooked from the falls and was left hanging between the side of the ship and the staging in such a way that as the ship rose and fell with the tide the staging would move or chafe on the ship and the rope would be worn, and that the appearance of the rope immediately after the breaking was described as torn or unravelled with each strand longer than the other and as ragged and "kind of burned." It further appeared that the rope was an inch and a half thick, and when in proper condition was of ample strength to have sustained the load.   Evidence was offered by the plaintiff to show that the superintendent made no examination of the rope before directing or permitting its use in lowering the staging. This evidence was excluded by the presiding judge, who ordered a verdict for the defendant.   *Held,* that it was a question for the jury whether the defendant's superintendent by using reasonable care should have known from inspec-

tion that the sling either was unsuitable when first used or had become weakened by chafing to such an extent as to be unsafe, and that, if the superintendent should have had such knowledge, his failure to take proper precautions which might have averted the accident was evidence of negligence in superintendence for which the defendant would be liable. *Held, also,* that the evidence that the superintendent made no examination of the sling before directing or permitting its use was plainly admissible and its exclusion was erroneous.

In an action by a longshoreman against a stevedore by whom he was employed for personal injuries, caused by the falling of a staging when being lowered from the side of a ship, upon which it had been hoisted into place five hours earlier, by reason of the breaking of one of the rope slings by which it was suspended while being lowered, where the plaintiff contends that the rope when in proper condition was of ample strength to have sustained the load, and that it was weakened so as to be made unsafe by being chafed between the side of the ship and the staging by the oscillation of the ship as she rose and fell with the tide, the weakening effect upon the rope of the chafing caused by the movement of the ship and also the fact that a physical examination of the rope would have shown the wear caused by its former use are matters of common knowledge on which the opinion of experts is not admissible, but the opinion of experts is competent to show what strain or load a rope of the diameter of that which broke would carry ordinarily when in good condition.

TORT, against a stevedore, at common law and under R. L. c. 106, § 71, for personal injuries received by the plaintiff on August 24, 1904, while in the employ of the defendant as a longshoreman and working on the dock at Pier 6 in that part of Boston known as East Boston, the first count, at common law, alleging that the defendant negligently furnished improper and unsafe tools and appliances for the plaintiff to work with, the second count, under the statute, alleging a defect in the ways, works or machinery of the defendant, and the third count, under the statute, alleging negligence on the part of the defendant's superintendent. Writ dated September 29, 1904.

At the trial in the Superior Court before *Dana,* J., it appeared that the plaintiff had been a longshoreman for eleven years, and that his injury was occasioned by the falling of a staging which was being removed from the steamship Canadian to the pier, that the plaintiff with others was prying up the shore end of the staging with a truck, when the rope by which the staging was being lifted broke, letting it fall and knocking the truck against the plaintiff; that one Sloan got the rope from a pile of ropes called cargo slings which the defendant kept in a room on the wharf which was in charge of the defendant's gear keeper; that the rope had been used on that day to raise the staging upon the

vessel, and that the accident happened about six P. M.    Other facts are stated in the opinion.

At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*H. F. R. Dolan*, (*T. R. Bateman* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

BRALEY, J.    While on the wharf holding one of the trucks upon which it was to be received and wheeled away, the plaintiff was injured by the fall of a staging as it was being lowered from the ship's side, owing to the parting of one of the slings by which it had been suspended.    It is not contended that he was careless, and the only question is, whether there was any evidence for the jury of the defendant's negligence.    It is the defendant's first contention, that, having provided a supply of suitable slings, he is not responsible, if the plaintiff's fellow servant, having been sent by the foreman to get eight slings, selected among others the one which broke, even if after they had been brought the foreman without examination directed or permitted it to be used. The common law rule, that where the master has provided a sufficient supply of proper temporary appliances from which his servants may make a selection to replace those which have become unsuitable, if a choice is made of a defective appliance whereby one of their number is injured, the master is not liable for the negligence of a fellow servant, is not under R. L. c. 106, § 71, applicable to a person intrusted by the master with superintendence.    One of the purposes of the enactment of the statute was to take this defense away.    The sling which broke, however, was an appliance furnished by the defendant to be used in his business, and must be considered either at common law or under the statute not a temporary makeshift devised by the men to aid them in the performance of their work, but as a part of the permanent instrumentalities which the defendant had provided for his employees.    *Feeney* v. *York Manuf. Co.* 189 Mass. 336.    *Donahue* v. *Buck*, 197 Mass. 550.    Accordingly, neither under the count at common law, nor under the statutory count for defective ways, works or machinery, was the defendant exonerated, if it could have been found that originally he had furnished a defective sling, or that, having provided a sound sling, it had become so weakened by age and wear as to be defective,

if by the exercise of reasonable diligence he ought to have known of its condition. *Rogers* v. *Ludlow Manuf. Co.* 144 Mass. 198. *Griffin* v. *Boston & Albany Railroad*, 148 Mass. 143.

Nor should a verdict for the defendant have been ordered under the third count, if there was evidence that Taft, whom the jury could find to have acted as superintendent, knew or ought to have known of a defective condition of the sling after it had been brought, and before it was put in use, or, if it was sound then, ought to have known that it had become weakened and unsafe at the time of the accident. *McKinnon* v. *Norcross*, 148 Mass. 533. *Coleman* v. *Mechanics' Iron Foundry Co.* 168 Mass. 254. *Donahue* v. *Buck*, 197 Mass. 550. *Ford* v. *Eastern Bridge & Structural Co.* 193 Mass. 89. *Cushing* v. *Smith Iron Co.* 194 Mass. 310. *Morena* v. *Winston*, 194 Mass. 378. The rope is described as an inch and a half thick, and all the witnesses agreed that, if in proper condition, it was of ample tensile strength to have sustained the load. If it parted when subjected to the ordinary strain for which it was designed, and nothing further appeared, the jury from their common experience could find that this would not have happened unless the rope in some way had become unsound. *Griffin* v. *Boston & Albany Railroad*, 148 Mass. 143, 147. *Graham* v. *Badger*, 164 Mass. 42. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192, and cases cited.

The placing of the stage in position on the ship and its removal were under the personal supervision of the acting superintendent. In the adjustment of the stage, a cleat on the under side held that end on the inside of the rail of the ship. After using the sling at one o'clock to hoist the stage into position, it was unhooked from the falls, unrove, and, as described by the witnesses, while the ends were thrown back on the deck, the rest of the rope was left hanging between the side of the ship and the ship's rail underneath the stage, where it remained caught between the cleat and the rail, until lowered at six o'clock. During this time the ship rose and fell with the tide, and the oscillation caused the stage to move, or chafe on the vessel and the rail. The appearance of the rope immediately after breaking was variously described as torn or unravelled, with each strand longer than the other, and as ragged and " kind of burned." The negligence of a superintendent under such cir-

cumstances may consist in a failure to take such precautions as a reasonably prudent man would take before subjecting himself or his employee to the chance of injury from imperfect or insecure appliances, as well as in giving improper orders or directing the performance of work under unsafe conditions. In the discharge of his duty it was for the jury to say, whether by using reasonable care he should have known from inspection, when the sling was used, that it was unsuitable, or should have known, when he directed that the staging should be taken down, that the sling had become weakened by chafing to such an extent as to be unsafe. If they so found, then his failure to take these precautions, which might have averted the accident, was evidence of negligence in superintendence, for which the defendant would be responsible. *Crowley* v. *Cutting*, 165 Mass. 436. *Reynolds* v. *Barnard*, 168 Mass. 226. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. *Donahue* v. *Buck*, 197 Mass. 550. *Connolly* v. *Booth*, 198 Mass. 577. The verdict directed for the defendant must be set aside, and a new trial ordered.

There remain the exceptions to the exclusion of evidence. If the lack of inspection could have been found to constitute negligence, evidence that the superintendent made no examination of the sling before directing or permitting its use was plainly admissible, and its exclusion was erroneous. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. The weakening effect upon the rope of the chafing caused by the movement of the ship, and the fact that a physical examination would have shown the wear caused by former use, were within the common knowledge of the jury without the aid of experts, but opinion evidence as to what strain or load a rope of like diameter would ordinarily carry was clearly competent, and should have been admitted. *Meehan* v. *Holyoke Street Railway*, 186 Mass. 511. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131.

*Exceptions sustained.*