Argued September 30, decided October 7, rehearing denied November 11, 1913.

## ASKATIN *v.* McINNIS & REED CO.*

(135 Pac. 322.)

**Master and Servant—Injuries to Servant—Safe Appliances—Statutes.**

1. While at common law a servant injured by a defective appliance could not recover upon mere proof of the defect, but had to show that the master had notice, or by ordinary care could have known of the defect, yet under the employers' liability law (L. O. L., p. xxxvi, § 5057a), providing that all persons engaged in the construction, repair, or alteration of any structure shall see that all metal, rope, or other materials shall be carefully selected and inspected so as to detect defects, the master is bound to select and inspect his appliances, and the servant is relieved of the burden of showing that he had notice of the defects.

**Master and Servant—Injuries to Servant—Safe Appliances—Negligence.**

2. A master engaged in construction work who failed to select and inspect ropes used by his servant is guilty of negligence, as a matter of law, employers' liability law (L. O. L., p. xxxvi, § 5057a) requiring such inspection.

[As to duty of master to inspect common or simple tools, see note in Ann. Cas. 1912A, 1004.]

---

*Upon the nondelegability of master's duty to protect servant from defects in ropes, see note in 54 L. R. A. 72.        REPORTER.

**Master and Servant—Injuries to Servant—Actions—Evidence.**

3. In an action by a servant injured by the breaking of a rope furnished by the master, where the rope itself was introduced in evidence, the jurors might from their common experience find that it was in some way defective, or had become unsound because it broke under an ordinary strain; consequently the question of the master's negligence was properly submitted.

**Master and Servant—Injuries to Servant—Actions—Instructions.**

4. As employers' liability law (L. O. L., p. xxxvi, § 5057a) abolished the defense of contributory negligence, merely allowing the jury to take it into consideration on the question of damages, an instruction, in a personal injury action by a servant, which defined contributory negligence, and informed the jury that it could only be considered on the question of damages, was proper.

From Multnomah: Gilbert W. Phelps, Judge.

The plaintiff, Arthur Askatin, brought this action against the McInnis & Reed Company, a corporation, to recover damages for personal injuries. From a judgment in favor of plaintiff, defendant appeals.

Affirmed.

For appellant there was a brief over the names of *Messrs. Wilbur & Spencer* and *Mr. A. E. Clark,* with an oral argument by *Mr. Clark.*

For respondent there was a brief and an oral argument by *Mr. John Ditchburn.*

Department 2.    Mr. Justice McNary delivered the opinion of the court.

This is an action for personal injuries sustained by plaintiff in the summer of 1911 while engaged in the erection of the Multnomah Club Building at Portland. Judgment for $6,000 was awarded plaintiff. The negligence charged consisted in supplying plaintiff with a defective rope. A recital of the specific acts of negligence reveals that, "on or about the 11th day of July, 1911, at about 10 minutes of 5 o'clock in the afternoon of said day the plaintiff, acting under, by,

67 Or.—21

and through the directions of the said defendants, and under the directions of one whose name this plaintiff does not know and is unable to state, but who was known as 'Jack,' that said Jack was termed and known as a 'straw boss' or foreman for these defendants, fastened to a tile a rope for the purpose of having the said tile hoisted by someone on the stage above to the said stage where the said tile was to be used; that the plaintiff fastened the rope safely and securely to the said tile, and immediately proceeded to fill a bucket with mortar to be used in the said building and directly under where the said tile was being hoisted; that after the said tile was hoisted part of the way up, and how far the plaintiff is unable to state, the rope broke, and the tile fell upon the shoulders and back of this plaintiff, injuring and bruising his shoulder and back, and injuring the pelvic bones and ligaments to such an extent that it has caused permanent disability and injury; that these defendants furnished and supplied the said rope, and carelessly failed and neglected to see that the said rope was carefully selected or inspected or tested; that the said rope was weak, worn and old, and these defendants could have ascertained and discovered and had knowledge of the defective condition of the said rope by the exercise of ordinary care, and they did have such knowledge.''

Defendants in answer to plaintiff's grievance assert that plaintiff and his fellow-servants selected the rope, and in so doing were careless; that plaintiff was guilty of contributory negligence, in that he stood immediately under the terra cotta while being hoisted, when he could with perfect safety and convenience have stepped aside to a point of safety; and that plaintiff had knowledge of and assumed the risks incident to his employment. When plaintiff rested, defendants

moved the court for a judgment of nonsuit, on the ground that plaintiff had failed to show a defect in the rope, or any negligence on the part of defendants with reference thereto. The trial court overruled the motion. Upon the introduction of all of the evidence, defendants requested the direction of a verdict in their favor, which the court refused to do.

1. Plaintiff builds his case upon that provision of the employers' liability law (L. O. L., p. xxxvi, § 5057a), which states: "All owners, contractors, subcontractors, corporations, or persons whatsoever, engaged in the construction, repairing, alteration, removal, or painting of any building, bridge, viaduct, or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission, and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all metal, wood, rope, glass, rubber, gutta-percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects."

Defendants' chief contention, as stated by counsel, is that the court fell into error in not sustaining their motions intended to exculpate them from liability, as no evidence was introduced by plaintiff showing the rope had not been inspected or tested, or that it was weak, worn or old, or not of the proper size, or that defendants had notice, or with the exercise of ordinary care could have known, of any imperfection in the rope, and that plaintiff's case is based solely on the fact that the rope broke, and the injury occurred as a result thereof. Repeatedly this court has announced that, when a servant brings an action for injuries caused by the failure of the master to provide safe appliances, mere proof of the accident which occasioned the injury is not sufficient; but the servant must show the injury was caused by the defective appliance,

and that the master had notice of the defect, or by the exercise of ordinary care could have known of the same. Reference is made to *Finn* v. *Oregon W. P. & Ry. Co.,* 51 Or. 66 (93 Pac. 690), as an illustrative case.

But this rule obtains only in those cases not coming within the embrace of the statute known as the employers' liability law, to which reference has been made. Under the provision of that sovereign enactment, no obligation rests upon the servant, as a condition prerequisite to recovery, to supply testimony showing the master had notice of the defective appliance occasioning the injury, or a state of facts from which that inference could reasonably be drawn. On the contrary, the imperative duty presses down upon the master to see that the instrumentalities furnished the servant with which to pursue his employment are carefully selected, inspected, and tested, so as to avoid defects. One of the purposes of the adoption of the statute was to permit the servant to escape from the necessity of bringing home to the master notice of a defect in an appliance, or that the master could have known of the imperfection by the exercise of ordinary care.

Selection, inspection and testing of the appliances enumerated in the act being statutory obligations imposed upon the master, it becomes thereby his duty to show that these commands have been observed. The statute in hand has so changed the common law as to impose upon the master duties to which he had not before been subject. The degree of care required of him in protecting his employees from injury has been increased by the prescription that the instrumentalities specified by statute and supplied the toilers shall be carefully selected, inspected and tested in such a manner as is compatible with reasonable care and prudence.

2. Returning to the case under consideration, the transcript of testimony is barren of any evidence indicating that defendants in any particular obeyed the mandates of the statute by selecting, inspecting and testing the rope which parted and precipitated the terra cotta upon plaintiff. Beyond that, defendants affirmatively assert in their answer that the rope was procured by plaintiff and his fellow-servants, who failed to exercise care in its selection. A diagnosis of the record reveals the situation that defendants failed to exercise that measure of prudence required by statute, which omission gives birth to the rule that a master, in failing to obey a statute designed for the protection of life and limb, is guilty of negligence as a matter of law.

3. Aside from these considerations is another, that at the trial a portion of the rope was introduced in evidence, being that wherein the break occurred. From the testimony of the plaintiff, it appears the condition of the rope remained unchanged between the time of the mishap and the trial of the case. The exhibition of the rope to the jury enabled them to say from their own personal experiences whether, in their opinions, the rope was suitable in size and condition for the use to which it was put. The eyes of the jurors were guides as faithful and proper as the testimony of witnesses in respect to the tensile strength of the rope. So, if the rope under consideration parted when subjected to the ordinary strain for which it was designed, the jurors from their common experiences could find that this would not have happened unless the rope in some way was inherently defective or had become unsound: *Doherty* v. *Booth,* 200 Mass. 522 (86 N. E. 945) ; *King* v. *New York Cent. & H. Ry. Co.,* 72 N. Y. 608.

From these several observations, the case was properly submitted to the jury.

4. The last assignment of error is based upon the giving of the following information to the jury: "Contributory negligence is the failure upon the part of a person who has been injured to exercise reasonable and ordinary care for his own safety under the circumstances, and which failure to exercise such care contributed to the accident or injury sustained. And if you find and believe from a preponderance of the evidence that the defendant was negligent in some respects charged in the complaint, but you also find and believe from a preponderance of the evidence that the plaintiff failed to exercise reasonable and ordinary care under all the circumstances at the time and place of the accident, and that the plaintiff was guilty of contributory negligence, then the court instructs you that you should take into account the said contributory negligence, if any, on the part of the said plaintiff in arriving at and in determining upon the amount of your verdict."

By an act of legislation, passed by the people under the initiative, and referred to as the employers' liability law, contributory negligence of the person injured is no longer a defense, but may be taken into consideration by the jury in arriving at the *quantum* of damages. Therefore we think the lower court gave utterance to the law as contained in the initiative measure, and applicable to the case at bar.

No errors appearing, the case is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.