# ERICKSON v. PACIFIC STATES LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. March 28, 1927.)

No. 4954.

**1. Master and servant ⬖276(4)—Evidence held not to show negligence as to employee injured by breaking of flywheel.**

Where a large flywheel purchased for defendant's mill was found to have a broken spoke, which was mended by brazing, then the customary method and considered safe, and the wheel was thereafter in continuous use without accident for 16 years, when it broke, injuring plaintiff, an employee, *held*, that such facts did not impute negligence to defendant, nor render it liable, in the absence of any evidence as to the cause of breaking.

**2. Master and servant ⬖265(5)—Accident raises no presumption of negligence of employer.**

The fact of an accident carries with it no presumption of negligence of the employer.

**3. Master and servant ⬖265(2)—Presumption is against negligence of master.**

The presumption of law is that an employer has discharged his duty toward his employee, which can be overcome only by proof of some negligent act.

**4. Master and servant ⬖101, 102(2)—Master does not impliedly warrant machinery to be perfect.**

Contract of employment does not imply an absolute warranty that master's machinery shall be perfect or its use free from risk.

**5. Master and servant ⬖276(4)—Master held not liable where cause of breaking of flywheel was matter of conjecture.**

Master *held* not liable for injury to employee by breaking of flywheel, where cause of breaking was mere matter of conjecture.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law by Herman Erickson against the Pacific States Lumber Company, commonly known as Cass Bay Lumber Company. Judgment for defendant, and plaintiff brings error. Affirmed.

The plaintiff in error was the plaintiff below in an action brought to recover damages for injuries sustained by him, while employed in the sawmill of the defendant, when a flywheel went to pieces. The action was brought under the Employers' Liability Act of Oregon (Or. L. §§ 6785–6791). The complaint alleged negligence: (1) In that the defendant should have supplied a new and unbroken flywheel; (2) that it should not have operated the flywheel with flaws that had been brazed, instead of having been welded; (3) the defendant should have em-

18 F.(2d)—33

ployed a man to be present and available to turn off the power in the event said flywheel ran away; (4) that the engineer in charge of said power plant knew of the condition thereof, and was negligent and careless, and violated section 6789 of the Oregon Laws, in that he left the power room at a time when the engine was in motion; (5) that the defendant negligently turned into the steam pipes connected with the engine operating said flywheel an excessive force of steam, by shutting down a portion of its plant, and failing to limit the steam power to the ordinary capacity of said engine.

At the close of the testimony the defendant moved for a directed verdict, on the ground that there was no evidence as to what caused the flywheel to break, and no evidence of a flaw in the engine which would cause it to run away, and no evidence that the running away of the engine would cause the accident, which produced the injury of which the plaintiff complained. The motion was allowed on the ground that the evidence was too conjectural and speculative to support a verdict for the plaintiff, or to overcome the presumption that the defendant discharged its duty to exercise the highest degree of care. The plaintiff assigns error to that ruling.

William P. Lord and Arthur I. Moulton, both of Portland, Or., and John D. Short, of San Francisco, Cal., for plaintiff in error.

Goss & Murphy, of Marshfield, Or., and Platt, Platt, Fales & Smith, Wm. C. Ralston, and Chester A. Sheppard, all of Portland, Or., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Concerning the alleged defect in the flywheel, the evidence is, in substance, the following: The wheel was 14 feet in diameter, and it carried a rim 28 inches in width. It had been in use in the mill 16 years. It had been cast in two sections, and when it arrived from the foundry it was found that a spoke of one section had been broken at a point about 8 inches from the rim. That section was immediately returned to the foundry for repair. Repair was made by the process of brazing. At that time welding was not locally known as a method of repair, and brazing was the approved method. The testimony was undisputed that the mended spoke was properly inspected and tested. The wheel was installed in the mill, the two sections having been attached together by bolts inserted in lugs

made in the rim for that purpose, and it was continuously used and occasionally inspected up to the time of the accident. A witness for the plaintiff testified that after the accident he found among the pieces of the broken wheel the spoke that had been brazed, and that the brazing had not penetrated the spoke, but that the original fracture could be seen, covered with rust. On the other hand, a witness for the defendant testified that the spoke which had been brazed was fractured, not at the braze, but a few inches therefrom.

The plaintiff relies upon the terms of the Employers' Liability Act, which it is said are particularly drastic in imposing upon an employer the highest degree of care in dangerous occupations, and he cites the interpretation thereof as expressed in Askatin v. McInnis & Reed, 67 Or. 320, 135 P. 322, in which it was said that under the act "the imperative duty presses down upon the master to see that the instrumentalities furnished the servant with which to pursue his employment are carefully selected, inspected, and tested, so as to avoid defects. One of the purposes of the adoption of the statute was to permit the servant to escape from the necessity of bringing home to the master notice of a defect in an appliance, or that the master could have known of the imperfection by the exercise of ordinary care. * * * The statute in hand has so changed the common law as to impose upon the master duties to which he had not before been subject." But that court has also held that, where an article not obviously dangerous has been used in safety for a long time, want of due care cannot be imputed to the master for continuing its use. Evansen v. Grande Ronde Lumber Co., 77 Or. 1, 149 P. 1035.

Here the flywheel had been in uninterrupted use for 16 years. We find in the record no item of evidence and no fact from which it can be inferred that the flywheel went to pieces as the result of the fracture of a spoke prior to its installation in the mill, or that the wheel, after having been repaired, was defective. The expert witness called by the plaintiff testified that he considered it practicable to braze that kind of a spoke, and he said, if properly brazed, "it should break outside of the braze, and would not break in the braze." There is no evidence tending in any way to show the cause of the breaking of the wheel. Whether it was from the wear on the bolts which held the two sections together, or from some defect in the casting when it was made, or from some other cause, the record affords no

light. We think it clear that, upon that feature of the negligence charged, there was nothing upon which the jury could properly have found a verdict against the defendant. [2-4] Nor are we convinced that there was evidence sufficient to go to the jury upon the other specifications of negligence, which were that an engineer should have been assigned to constant attendance at the engine, in order to check excessive speed, and that the engineer who was in charge thereof was negligent in leaving the power room as he did just prior to the accident. "The fact of accident carries with it no presumption of negligence on the part of the employer." Patton v. Texas & P. Ry. Co., 179 U. S. 658, 663, 21 S. Ct. 275, 277 (45 L. Ed. 361). The presumption of law is that the employer has discharged his duty toward his employee, a presumption to be overcome only by proof of some negligent act on the employer's part. Askatin v. McInnis & Reed Co., 67 Or. 320, 135 P. 322. The contract of employment does not imply an absolute warranty that the master's machinery shall be perfect, or the use thereof free from risk. Armour v. Hahn, 111 U. S. 313, 4 S. Ct. 433, 28 L. Ed. 440. Here no witness testified definitely as to the cause of the accident. There is nothing to show that on the day on which the accident occurred there was any departure from the practice that had been followed for 16 years. There is no evidence that it was negligence to operate the engine without the constant attendance of an engineer to control power or reduce speed. And while it was shown that the engine had been at times operated in such a way as to cause such extraordinary noise and vibration of machinery as to create alarm, the evidence was that the apprehension of the employees was not that the flywheel might burst, but that the swaying steam pipe and tank might burst. In short, they were afraid of the steam, but "never thought of the engine going to pieces."

[5] It was shown that in lumber mills it was the general custom for one engineer to take charge of as many engines as it was possible for him to manage, and that it was not deemed necessary to detail a man to have charge of each. An expert witness for the plaintiff testified that an engineer is supposed to stay at his throttle, but the reason he gave therefor was that the engineer never knew when he might get a quick-stop signal on account of a band saw flying off, or a saw getting caught in a log. There was evidence that the speed of the engine in question was variable; that when the load was thrown off

it would speed up, with resulting noise and vibration. There was evidence to show that on prior occasions it had "run away." There was an admission in the answer to the original complaint, but subsequently withdrawn, that the flywheel had upon two occasions, a long distance apart, run away; but no evidence was adduced to show any defect which caused it to run away, or to show in what the running away consisted, or what was its effect, or that it could have had causal connection with the accident. In brief, we find no ground to disturb the conclusion of the trial court that from all the evidence the cause of the breaking of the wheel was a mere matter of speculation and conjecture.

The judgment is affirmed.