### LYONS v. KNOWLES et al.

### No. 18,010; April 11, 1893.

#### 32 Pac. 883.

**Employer's Liability—Defective Appliances—Evidence.**—In an action by a servant against the master for injuries caused by the breaking of the hook of the upper block on a derrick used in moving stone, there was evidence that the hook, which was of wrought iron, broke because of crystallization. The derrick, block, and hook had been in use but a few months. Defendant's expert testified that, if the iron had been flawless, the hook could have been safely used for

about five years in lifting from seven to ten tons, while plaintiff's expert testified that if the hook was new it would support six tons, which was the weight of the stone being raised when the hook broke. Held, that the evidence was insufficient to charge defendant with negligence.

APPEAL from Superior Court, Fresno County; M. K. Harris, Judge.

Action by Charles C. Lyons against F. E. Knowles and others for personal injuries. From a judgment for plaintiff, defendants appeal. Reversed.

James G. Maguire, A. A. Moore and J. C. Martin for appellants; Thompson & King and Church & Cory for respondent.

TEMPLE, C.—This action was brought to recover damages for a personal injury, alleged to have been caused through the negligence of defendants. It is alleged that defendants, as partners, were engaged in quarrying rock and transporting the same by railroad, and employed one Dusy to haul the rock from the quarry to the railroad station, and there load the same on the cars; that by the terms of their contract with Dusy they agreed to furnish all necessary and proper machinery and appliances for the purpose of loading and unloading the rock, and to furnish assistance in loading the rock from the ground onto the cars; that in October, 1888, while Dusy was engaged in hauling and loading granite blocks under the contract, defendants, regardless of their duty, and the lives and safety of plaintiff and others employed in loading and unloading the same, carelessly and negligently caused to be attached to a derrick a block and tackle for the purposes of loading and unloading said granite, which block and tackle was used during all of the times mentioned in the complaint; that said block and tackle, and particularly the hook of the upper block, was imperfectly constructed, defective, weak and unsafe, and wholly inadequate in strength to support the weight of a particular block mentioned in the complaint, and that defendants knew of the imperfection and unsafeness; that on the 1st of December, 1888, plaintiff was employed and hired by Dusy to load and unload said granite, and was then and there, with the assistance of defendants and em-

ployees, engaged in loading from the ground onto a car a certain block of granite, and that, while so engaged, the hook alluded to, by reason of its imperfection and inadequacy, broke and gave way, without fault of plaintiff, causing the rock to fall, crushing his foot so that amputation became necessary. After a demurrer had been overruled, defendants answered, denying that they were partners, and in effect all the allegations of the complaint. The case was tried by a jury, which returned a verdict for plaintiff. A motion for a new trial was made by defendants, one of the grounds of which was that the evidence was insufficient to support the decision. The motion having been denied, the defendants appeal from the judgment and from the order denying them a new trial.

On the trial plaintiff testified that he was employed by Dusy, but did not know the contract between Dusy and defendants; that Dusy was engaged in hauling granite from the quarry to the switch, and in loading it upon the cars; that defendants had erected at the switch a derrick, to be used in loading the granite upon the cars. Plaintiff was employed by Dusy to attend to the loading at the switch. When the cars were ready to receive the granite as it came down on the wagons, Mr. Dusy's teamsters and plaintiff loaded it from the wagons to the cars. If no cars were there when hauled, the rock was unloaded on the ground, and, when the cars came, defendants always sent men to assist him. Defendants or their clerk would designate what rock should go upon certain cars, but otherwise exercised no supervision or control of the matter of loading. Appellants urge many reasons for a reversal of the judgment, among them that the evidence shows that defendants were guilty of no negligence.

Plaintiff's account of the accident was as follows: "I was engaged in loading a large block of granite, weighing about six tons, from the ground to a flat car. Louis Knowles, the bookkeeper of defendants, his son, and Mr. Johnson, all of whom were in the employment of F. E. Knowles & Co., were helping me. We had hoisted the block of granite from the ground, and swung it around over the flat car. I think I gave all the orders that were given on that occasion. When the granite block had been hoisted to a sufficient height to swing clear of the car, I put on the brake on the winch with which we did the hoisting, and gave the lever of the brake to Mr.

Louis Knowles, and told him to hold it.  I then took hold of a rope attached to the granite block, and swung it around over the car and fixed it in the position in which it should rest upon the car. . . . . I was holding the block of granite in position.  I reached over with my right hand to get a timber to place under the end of the block of granite when lowered to the car.  I had my left hand still on the block of granite, steadying it.  Just as I leaned over to get hold of the timber, the hook of the upper block attached to the end of the boom, and from which the granite block was suspended, broke, and the granite block fell on my foot.''  He also testified that he thought the derrick was improperly rigged, because the block with three sheaves was at the bottom, and the block with two sheaves was at the top.  It ought to have been reversed.  Also, that the derrick had been erected by Dusy, at the quarry in May or June, 1888, and that witness had been employed by Dusy for several months prior to August of that year, and while so employed he worked with the same derrick.  He also testified, on cross-examination, that he did not know the exact weight of the rock, but thought it was between five and six tons; that they had previously loaded several blocks of the same size with the one which fell on his foot with the same derrick, and the same block and tackle, and the same hook that broke.  Another witness said that the derrick was improperly rigged, because the three sheaves ought to have been at the top instead of at the bottom.  The weight would have been more evenly distributed, and a jolt or jar would not have caused so great a strain.  He said: ''Sometimes in hoisting rock the second row of coils of the rope on the drum of the winch will slip through the first row, causing a jar, and straining the derrick.''  There was no jar during the raising of the rock which fell and injured plaintiff.

It appeared that the hook was composed of common wrought iron, an inch and a quarter thick, and the evidence tended to show that the break was caused by the crystallization of the iron—a defect which no one could have discovered by examining the iron.  A witness was examined for plaintiff as an expert who said that he was a machinist, but did not know the breaking weight of common black iron.  He was allowed to testify, however, without objection on that ground, and said he thought the hook, when new, would not sustain more than

six tons as a breaking weight; didn't think it would be safe in hoisting a ton when it broke, but thought the breaking weight of such a hook would be about six tons, and its working weight about four tons. He thought from appearances that the block and tackle were old. Defendants proved by Dusy, whose testimony was uncontradicted, that the derrick and block and tackle were procured new in March of that year, and had therefore been used only a few months before the accident; and by Sheppard, a civil engineer, who claimed to be familiar with the tensile strength of iron and steel, that the lowest tensile strength of an inch bar of common black iron was twenty-two tons; and he said that in thirty experiments conducted by scientific men the lowest breaking weight found was twenty-two tons. The hook which broke here was one inch and a quarter, and should sustain a weight in excess of twenty-two tons, by at least twenty-five per cent. He thought if the iron had been free from flaw it could safely have been used for from four to five years in lifting from seven to ten tons. The hook had not been used one year. Berchig, plaintiff's expert witness, thought it must have been old, but said, if new, it would support six tons. But, to charge defendants with negligence in allowing the hook to be used, it must not only appear that it was in fact insufficient, but that defendants knew of its defectiveness, or by the use of ordinary diligence and care could have known it. It was shown that the iron was apparently sound, and that its defect could not have been discovered by an examination. It was apparently sufficient for the purpose for which it was used. It had been frequently used in lifting blocks of the same size. Although it proved to be in fact insufficient, its continued use under such circumstances is not proof of negligence: Sappenfield v. Railroad Co., 91 Cal. 57, 27 Pac. 590.

As to the rigging of the derrick, plaintiff's means of knowledge of the defect, if any, was at least equal to defendants'. It appears as a fact that he did not know of it, and, as there was no jolt or jar at the time of the accident, it is difficult to see how it could have contributed to the accident. The injury, therefore, must be attributed to accident for which no one can be held responsible. An employer does not guarantee the sufficiency of appliances furnished, but only for the exercise of such skill and diligence in providing safe ma-

chinery as discreet and prudent men would use where the risk is their own. I do not think negligence on the part of defendants could reasonably be inferred from the evidence. Taking this view of the case, it is not necessary to consider the other points raised. For the purpose of this decision it is assumed, but not decided, that defendants would have been responsible had it been shown that there was negligence in the use of the derrick. I think the judgment and order should be reversed, and a new trial had.

We concur: Vanclief, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, and a new trial ordered.