## STANDARD OIL CO. OF NEW JERSEY v. DE VRIES.

(Circuit Court of Appeals, Third Circuit. February 20, 1925. Rehearing Denied March 28, 1925.)

No. 3155.

**1. Master and servant ⬥286(21)—Negligence in not providing safe gangplank or passageway from lighter to tanker held for jury.**

In action for death of employee, slipping on wet paint while stepping from rail of lighter to rail of tanker in transferring merchandise from one to the other, question whether failure to provide safe passageway by ladder, gangplank, or other means was negligence *held* for jury, though there was no evidence that such devices were customary or demanded by good practice.

**2. Negligence ⬥1—"Negligence" defined.**

"Negligence" is failure to do what a reasonably prudent person would do, or the doing of what he would not do, under similar circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**3. Negligence ⬥136(14)—Question for jury.**

What a reasonably prudent person would or would not do under similar circumstances is question for jury.

**4. Master and servant ⬥101, 102(8)—Reasonable care required in providing appliances and place of work.**

It is master's duty to exercise reasonable care for safety of employees engaged in duties more or less dangerous, and not to expose them to danger of being hurt or injured by use of unsafe appliances or unsafe place to work.

**5. Master and servant ⬥286(3)—Negligence in not providing safe appliances and place of work question for jury.**

Whether master has exercised reasonable care, so as not to expose servants to injury because of unsafe appliances or unsafe place of work, is question for jury, and not for court, except where facts are such that all reasonable men must draw same conclusion.

**6. Master and servant ⬥103(1)—Master's duty nondelegable.**

Master's duty to exercise reasonable care to prevent servants from being injured because of unsafe appliances and unsafe place of work is nondelegable.

**7. Witnesses ⬥325—Plaintiff held not precluded from impeaching defendant's witness on theory that by cross-examination she made witness her own witness.**

In action for death, where witness testified for defendant as to how accident happened,

plaintiff, in cross-examining witness as to wet paint on which plaintiff claimed deceased slipped, did not make the witness her own witness, so as to be precluded from impeaching him, though witness on direct examination did not mention the paint.

In Error to the District Court of the United States for the District of New Jersey; William N. Runyon, Judge.

Action by Catrina De Vries, administratrix ad prosequendum of the estate of Johan De Vries, deceased, against the Standard Oil Company of New Jersey. Judgment for plaintiff, and defendant brings error. Affirmed.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Albert C. Wall, of Jersey City, N. J., and Vernon S. Jones, of New York City, of counsel), for plaintiff in error.

Lester Hand Jayne, of New York City, for defendant in error.

Before WOOLLEY, and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge. This case is here on writ of error of the Standard Oil Company hereinafter called defendant, to review a judgment secured against it by plaintiff. Johan De Vries was engaged on July 11, 1923, in transferring merchandise or "stores" from the defendant's lighter, Standlight, to its tanker, Pioneer, while lying in tidewaters adjacent to Pier 5 of the defendant at Bayonne, N. J. While passing from the Pioneer to the Standlight, in the performance of his duties, his foot slipped, and he fell on his abdomen against the rail of the Standlight, and was so badly injured that he died the following day. His widow was appointed administratrix ad prosequendum, and brought this suit on the ground, among others, that the defendant was negligent under the circumstances, in that it failed to provide a safe passageway by ladder, gangplank, or other means by which the deceased could pass from one boat to the other. The case was tried to the court and jury, which rendered a verdict for the plaintiff. The case is here on defendant's writ of error, which is based on three assignments.

The first is the refusal of the court to direct a verdict for the defendant, on the ground that no negligence on its part had been shown. The next assignment is based upon the charge by the court of the following request:

"If you shall determine from the evidence that a reasonably prudent shipowner would have furnished a passageway of some kind other than as disclosed, to be used by its employees, such as the decedent here was, in passing from the lighter to the ship, when situated with respect to each other as these boats were, then the entire absence of such a passageway of some kind would constitute negligence on the part of the defendant in this case."

These two assignments amount to this: Was it a question for the court or the jury to say, under the circumstances, whether or not the defendant was negligent in not furnishing a passageway of some kind to be used by its employees in transferring the goods from one boat to the other?

[1, 2] These assignments of error are based on the contention that "there was no evidence in the case that such devices (gangplanks and passageways) were customary, or demanded by good practice in handling vessels in the circumstances disclosed by the proofs." In other words, defendant says that, before a jury should have been allowed to determine whether or not a reasonably prudent shipowner would have provided a passageway under the circumstances of this case, it was necessary to show that it was customary to do so or was "demanded" by good practice. If this contention is a general rule of law, applicable in all cases, it means that, however dangerous and unsafe a condition under which men work becomes, negligence cannot be established against the party responsible for such dangerous and unsafe condition until a practice has grown up, or a custom has become established, of some recognized means of avoiding the danger. Under this theory, evidence, showing an absolutely unsafe and dangerous condition, does not furnish a jury question until sufficient time has elapsed and enough people have adopted some particular means to avoid the danger to constitute a "practice" or "custom"; that then, but not until then, is a jury permitted to say that the condition is dangerous, and the person who maintained it negligent, because he did not adopt the customary means of avoiding the danger. On this theory, custom establishes the duty, and where there is no custom there can be no duty, and consequently no negligence. This position is unsound in principle. Negligence is the failure to do what a reasonably prudent person would do, or the doing of what he would not do, under similar circumstances, and what a reasonably prudent person would or would not do is a question for the jury. Negligence in the

case at bar is predicated, not simply upon the position of the two boats, but upon their position plus their condition of having their rails covered with wet paint. The plaintiff alleged that the defendant negligently, carelessly, and recklessly caused the decks and railing on the two ships to be covered with fresh, wet, and slippery paint, with knowledge that the plaintiff's intestate was so engaged as to be obliged to traverse the areas painted, and with the further knowledge that this was dangerous to deceased, and might cause him to lose his balance and fall.

[4-6] Plaintiff offered evidence tending to show that wet paint was on the rails of the vessels, and that the deceased's duty required him to pass over the rails in this condition. Where workmen are engaged in a business more or less dangerous, it is the duty of the master to exercise reasonable care for the safety of his employees, and not to expose them to the danger of being hurt or injured by the use of unsafe appliances or an unsafe place in which to work, and whether or not he has exercised that care is a question of fact for the jury, and not for the court, except where the facts are such that all reasonable men must draw the same conclusion from them. Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 417, 12 S. Ct. 679, 36 L. Ed. 485; Gardner v. Michigan Central Railroad, 150 U. S. 349, 361, 14 S. Ct. 140, 37 L. Ed. 1107; Kreigh v. Westinghouse & Co., 214 U. S. 249, 255, 257, 29 S. Ct. 619, 53 L. Ed. 984. This duty is nondelegable. Stewart & Co. v. Newby (C. C.) 266 F. 287, 292. It was for the jury under all the circumstances to say whether or not the defendant was negligent in not providing a passageway from boat to boat. The jury found that this constituted negligence.

[7] The remaining assignment concerns the alleged impeachment, over objection, by plaintiff of her own witness, Fred De Roco, who was food inspector, and inspected the food delivered to the boat, and had charge of the "gang" of which De Vries was a member. At the time of the accident he was standing on the deck of the Pioneer, directly behind De Vries. He saw the accident. Defendant called him as a witness, and asked him to describe it. He did so, saying

that, as the deceased stepped from the rail of the Pioneer to the rail of the Standlight, "his foot slipped and threw him right over on his stomach, just like a punch in the stomach." He did not, however, mention the wet paint on the decks and rails of the vessels. The defendant then turned De Roco over to the plaintiff for cross-examination, and, when asked if he saw the wet paint on the rail, he said, "I didn't see no wet paint on the rail," and further said that he had never said that he did, and had "never signed any statement that there was wet paint on the rail," or on any part of it.

Counsel for plaintiff had a copy of the statement signed by De Roco for the defendant. In this statement it appears that the witness had said that "wet paint was on the rail." In explaining the cause of the fall, he further said in the statement that "the accident happened so quickly and unexpectedly that I cannot explain exactly what caused it, beyond the fact that he might have gotten his right foot into some of the wet paint marks, causing him to slip." These statements contradict the testimony of De Roco that he did not see wet paint on the rail of the Standlight. Counsel for defendant here, as he did in his colloquy with the court and counsel at the trial, contends that the plaintiff's counsel, in examining the witness on the subject of wet paint, went outside of the limits of the examination in chief and made De Roco her own witness, and therefore had no right to contradict his testimony with his statement.

But we do not think that plaintiff made De Roco her witness. Counsel for defendant introduced the subject of how the accident occurred. De Roco said De Vries' foot slipped, but he did not say what caused it. The statement was incomplete. Plaintiff on cross-examination had the right to have the whole story. The defendant introduced the subject of deceased's slipping. The plaintiff on cross-examination was entitled to find out why he slipped, and this she did by the testimony as to wet paint. In doing this we do not think that she went outside the limits of legitimate cross-examination and made the witness her own.

The judgment is affirmed.