## PHILLIPS PETROLEUM CO. v. MANNING.
### No. 10421.

Circuit Court of Appeals, Eighth Circuit.
Feb. 3, 1936.

850

Rayburn L. Foster, of Bartlesville, Okl. (Neill C. Marsh and Neill C. Marsh, Jr., both of El Dorado, Ark., and R. H. Hudson, of Bartlesville, Okl., on the brief), for appellant.

Charles E. Wright and Robert C. Knox, both of El Dorado, Ark. (Lamar B. Smead, of El Dorado, Ark., and Homer T. Rogers, of Smackover, Ark., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

Appellee, plaintiff below, brought action in the lower court to recover for the death of her intestate. We shall refer to the parties as they appeared below.

The complaint charged that plaintiff's intestate, at the time of receiving the injuries from which he later died, was in the employ of defendant, and was one of a crew of men engaged in pulling the tubing and rods from an oil well; that defendant had erected and maintained over said well a steel derrick, which, by reason of defendant's negligence properly to construct and maintain, had become warped, twisted, out of plumb, and greatly weakened; that to pull the tubing and rods it was necessary that steel lines of cable be suspended from the crown block of the top of the derrick and connected with the tubing and rods and be operated through pulleys or blocks in the nature of a block and tackle, which lines were connected with a tubing pulling machine operated by a gasoline engine; that, at the time in question, the tubing pulling machine was a large and powerful truck developing many horse power and capable of running at high speed; that plaintiff's intestate, in the performance of his duties, was required to go up into the derrick and stand on a board for the purpose of steadying and placing various sections of tubing and rods as they were taken out of the well; that the tubing, on account

of its length and weight and on account of the fluid contained therein and on account of being incased in sand and mud, weighed many tons, and defendant negligently undertook to pull the tubing with two lines instead of three or more; that, with knowledge that the derrick was weak, bent, warped, twisted, out of plumb, and insufficient to withstand the strain of lifting said tubing, and that the use of only two lines instead of three or more would increase the strain upon said derrick, the foreman in charge of the crew carelessly started the motor in the tubing pulling machine and caused the same to race at a violent rate of speed, and carelessly threw in the clutch of the machine, causing a violent jerk upon said lines and a tremendous strain upon said weakened derrick; that, by reason of such carelessness, the derrick collapsed with plaintiff's intestate, inflicting injuries upon him from which he thereafter died.

Defendant's answer admitted the employment of plaintiff's intestate; admitted that he was, at the time of receiving his injuries, working with a crew engaged in pulling tubing and rods from one of its wells; admitted that it had erected a steel derrick over the well, and that it was employing such derrick in a process of pulling the tubing by means of pulleys and blocks in the nature of a block and tackle, connected with a pulling machine. It denied that its derrick was weak, warped, twisted, or otherwise insufficient, and put in issue all charges of negligence, and pleaded that its derrick was standard equipment in general use, which had been regularly inspected, and that such inspection failed to reveal any defects therein, and that the collapse of the derrick was not due to its age, rust, or warped condition, that, if defendant was guilty of the acts of negligence charged in the complaint, the condition of the derrick was known to plaintiff's intestate and the danger thereof appreciated by him, and that, if the methods of performing the work of pulling the tubing constituted negligence, plaintiff's intestate had knowledge thereof and appreciated the danger therefrom, and hence assumed the risk of injury. Defendant further alleged that, if in fact the defendant O. E. Leggett (later dismissed from the action) was guilty of any negligence which caused or contributed to the injury or death of plaintiff's intestate, all risk of injury by reason of the negligence

of his fellow servants was assumed by plaintiff's intestate, and that section 7137, Crawford & Moses' Digest of the Statutes of Arkansas, in so far as it purported to abolish the fellow servant rule as to all corporations, regardless of the business in which engaged, was in violation of the Fourteenth Amendment to the Constitution of the United States, and hence void.

At the close of all the evidence, defendant moved for a directed verdict, which motion was denied, and the case was submitted to the jury on instructions to which defendant saved certain exceptions. The jury returned a verdict in favor of plaintiff for $30,000. From the judgment entered thereon, defendant prosecutes this appeal, and asks for a reversal of the judgment on the grounds that (1) the court erred in refusing to direct the jury to return a verdict for defendant; (2) the court erred in refusing instructions requested by defendant, and in giving certain instructions excepted to by defendant.

The complaint charged negligence in two particulars, first, in maintaining a warped, twisted, and weakened derrick; and, second, the act of the gang pusher in pulling the tubing with two lines instead of three.

Defendant was not an insurer of the safety of plaintiff's intestate, nor did it guarantee the safety of the place in which he worked nor the appliances furnished him. Baltimore & P. R. Co. v. Mackey, 157 U.S. 72, 15 S.Ct. 491, 39 L.Ed. 624; Washington & G. R. Co. v. McDade, 135 U.S. 554, 10 S.Ct. 1044, 34 L.Ed. 235. It was, however, defendant's duty to exercise ordinary care in furnishing him with a reasonably safe place in which to work and reasonably safe appliances. Hough v. Texas & P. R. Co., 100 U.S. 213, 25 L.Ed. 612; Standard Oil Co. v. De Vries (C.C. A.3) 3 F.(2d) 852; Gray v. Davis (C.C. A.1) 294 F. 57; Beulah Coal Mining Co. v. Verbrugh (C.C.A.8) 292 F. 34; Union Pac. R. Co. v. Marone (C.C.A.8) 246 F. 916; H. D. Williams Cooperage Co. v. Headrick (C.C.A.8) 159 F. 680; Cryder v. Chicago, R. I. & P. Ry. Co. (C.C.A.8) 152 F. 417. This duty was a continuing one, which could not be discharged for all time by furnishing in the first instance a reasonably safe place in which to work and reasonably safe tools and appliances for use in such work. The duty of the master in these regards is nondelegable, and whoever performs such duties or func-

tions is to that extent performing the duties of the master, and failure to exercise ordinary care in so doing will render the master liable in the event that injury proximately results from such negligence.

■■■ In considering the question of the sufficiency of the evidence to sustain the verdict, we need only to determine whether the evidence, viewed in the light most favorable to the plaintiff, was substantial. Was there substantial evidence going to prove not only the acts of negligence charged, but that such alleged negligence was the proximate cause of plaintiff's intestate's injuries? In an action of this character, the rule res ipsa loquitur cannot be invoked. Patton v. Texas & P. R. Co., 179 U.S. 658, 21 S.Ct. 275, 277, 45 L.Ed. 361; New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; Midland Valley R. Co. v. Fulgham (C.C.A.8) 181 F. 91; Shandrew v. Chicago, St. P., M. & O. Ry. Co. (C. C.A.8) 142 F. 320; Latting v. Owasso Mfg. Co. (C.C.A.8) 148 F. 369; Cryder v. Chicago, R. I. & P. Ry. Co. (C.C.A.8) 152 F. 417, 419; Kansas City Southern Ry. Co. v. Cook, 100 Ark. 467, 140 S.W. 579. The fact of an accident gives rise to no presumption of negligence on the part of the employer, and the burden of proving such negligence rests upon the plaintiff.

In Patton v. Texas & P. R. Co., supra, the rule in this class of cases is stated as follows:

"The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. Texas & P. R. Co. v. Barrett, 166 U.S. 617, 17 S.Ct. 707, 41 L.Ed. 1136. Second. That in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was."

■■■ As to the first grounds of alleged negligence, we have searched the record with great care, and find no evidence that the derrick, as maintained by defendant, excluding as we must the evidence of the accident, was warped, twisted, out of plumb, or in a weakened condition. The derrick was one of standard make and in general use. It had been blown over by a storm in the spring of 1933. The evidence of plaintiff's own witnesses was to the effect that the derrick was repaired after the storm; that one leg of the derrick had been bent, another leg had been sprung, and some other parts were bent. Certain parts were taken out and straightened, while others were straightened while still in place and without being heated. But this testimony is to the effect that, when repaired, the derrick was as straight and plumb as it was before the storm, so that, so far as the eye could observe, there were no twisted parts and no apparent defects. After being straightened up, it was later gone over by employees, and every bolt and nut in the entire steel structure was tightened up. It was, in fact, used in the usual and ordinary way after being repaired for a period of two years prior to this accident, and tubing had been pulled from the well in question ten times. There is no testimony that during that time any defect was found in the derrick, but the testimony stands without dispute that the workmen using it observed nothing wrong with it. There is no evidence indicating that the appliance was obviously dangerous, and proof that it was continually used for a period of two years without any indication that it was defective or inadequate refutes any imputation of negligence in continuing its use. Erickson v. Pacific States Lumber Co. (C.C.A.9) 18 F.(2d) 513; Carnegie Steel Co. v. Byers (C.C.A.6) 149 F. 667, 8 L. R.A.(N.S.) 677; Latting v. Owasso Mfg. Co. (C.C.A.8) 148 F. 369; Evansen v. Grande Ronde Lumber Co., 77 Or. 1, 149 P. 1035; Stringham v. Hilton, 111 N.Y. 188, 18 N.E. 870, 1 L.R.A. 483; Robinson v. Charles Wright & Co., 94 Mich. 283, 53 N.W. 938; Cunningham v. Journal Co., 95 Mo.App. 47, 68 S.W. 592; Lyons v. Knowles, 3 Cal.Unrep. 846, 32 P. 883. As already observed, for two years this derrick had been supporting the strain and weight of pulling these tubings, without sign of weakness or inadequacy until the very moment of this accident. What is said by the Missouri Court of Appeals in Cunningham v. Journal Co., supra, is here apposite. It is there said (syllabus):

"Where plaintiff was injured by the breaking of machinery used in hoisting an iron casting, and the break was a clean break, showing no indication of a previous weakening at the point where it occurred, and the same machinery had been used by defendant for the same purpose in

lifting weights equal to the one which was being raised when it broke, and the machinery was of the kind generally used for that purpose, the accident was one which could not, with ordinary care, have been guarded against, and was a hazard incident to the business, which plaintiff thereby assumed."

In Cryder v. Chicago, R. I. & P. Ry. Co., supra, an iron round of the ladder on a railroad car had given way, injuring an employee. In an opinion by the late Judge Sanborn, it is pointed out that the duty of inspection required only the exercise of ordinary care. There was evidence that five rounds of the ladder had been bent before the accident. In the course of the opinion it is said:

"A new fracture of the screw occurred an inch or an inch and a half within the wood of the car. But this fact fails to overcome the presumption that the inspectors discharged their duty, because the weakness of this screw may have been a latent defect which a reasonably careful inspection of the car would not have disclosed, and the servant assumes the risk of such defects.

"The plaintiff was injured by the break of the screw. But the facts that the screw gave way, and that the plaintiff was thereby injured, are insufficient to establish the negligence of the inspectors or of the defendant, because they do not show whether the injury was caused by negligence in inspection or by a latent defect, and proof that it was caused by the former, and not by the latter, was indispensable to overcome the presumption that the inspectors exercised reasonable care to examine the cars. The doctrine res ipsa loquitur is inapplicable to cases between master and servant brought to recover damages for negligence."

Again, this court in Missouri, K. & T. Ry. Co. v. Foreman, 174 F. 377, 383, said:

"The presumption is that defendant furnished an engine reasonably suitable for the work to be performed by it, with appliances in a reasonably safe condition for use; that is to say, it was not negligent in this regard. This presumption must be overcome by evidence before a recovery can be had on this ground."

In that case, there was evidence that the engine, on the day of the accident, leaked steam at the throttle, but the extent of the leakage was not shown. So,

in the case at bar, it is argued that there was evidence that two years before the accident certain parts of the derrick were bent and repaired, and there is evidence that there were some other methods of repair that might have been better. There was no evidence as to the extent of any impairment of the strength of this derrick, and its continuous use for two years after repair certainly overcame any inference of defect or inadequacy that might be drawn from the fact of damage and repair. Defendant was not bound to use the safest and best method or contrivance. Its duty was to exercise ordinary care in the furnishing and maintaining of these appliances.

■ There is a further fatal defect in the evidence in so far as the alleged inadequacy of this derrick is concerned. The only proof as to any defects consists of proof that certain parts of the derrick had been bent. But even if there was sufficient evidence of negligence in the matter of repairing this derrick, there is no evidence to show that the derrick collapsed at the time of the accident in question by reason of any former damage or defects. It appears from the testimony that the derrick did not give way at the points which had been bent and repaired, and hence there was no causal relation between the alleged negligence and the accident. Proof of negligence alone does not give rise to a cause of action, but the negligence complained of must have been the cause of the injury. Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Atchison, T. & S. F. R. Co. v. Saxon, 284 U.S. 458, 52 S.Ct. 229, 76 L.Ed. 397; Louisville & N. R. Co. v. Davis (C.C.A.6) 75 F.(2d) 849.

■ We conclude that there was no substantial evidence to sustain the charge of negligence in failing to furnish plaintiff's intestate a reasonably safe place in which to work, and it was therefore error to submit this issue to the jury.

As the case must be remanded for a new trial, we shall consider the contention that defendant was negligent in the method or means used in pulling this tubing, in that it undertook to lift the tubing with two lines instead of three. In the process of pulling the rods and tubing from this well, there were employed certain steel cables equipped with blocks and pulleys, in the nature of block and tackle. The

mechanism and method of using it are not described in detail. It appears that the pulleys were so arranged that one line, two lines, or three lines might be employed. The function and purpose of the contrivance was to increase the power transmitted from the engine to the object to be hoisted, and, the more lines used, the greater the power developed. As the power increases, the speed decreases, or, in other words, the propelling power, in this case an engine operating a winch on which the cable is wound, can by the use of three lines hoist a heavier weight than by the use of two.

On the day in question, this crew first employed three lines attached to the so-called rods and top of the tubing. The tubing was approximately 2,000 feet in length. It was stuck and sanded in the well, and the top at least was loaded with fluid, making it very difficult to pull it loose and hoist it. The tubing, however, was pulled loose and hoisted up, so that the first joint was removed. This initial part of the work was successfully performed with no indication of breakage of or inadequacy in the derrick. It stands without dispute that the removal of this first joint involved the hardest pulling and the hoisting of the heaviest weight. Following this movement, the cable was again attached to the pipe, and this time but two lines were used, so that relatively, the pulleys, instead of multiplying the direct power exerted by the engine by three, multiplied that power only by two. (We are not attempting to give the scientific ratio of power developed.)

Having in mind these physical facts, we wish to call attention to certain testimony produced by plaintiff. One witness testified:

"I figure it would put a third more strain on it with two, than it would with three. That is the way to reduce the power and speed, when you tie back on two lines."

Another witness testified:

"If you pull with two lines, there would be a third more strain on the derrick than there would be with three lines."

Certain other of plaintiff's witnesses testified to substantially the same thing. But this testimony is contrary to physical fact and scientific principle. If the cable were attached to a granite mountain and a powerful engine propelled the winch at-tached to the other end of the cable, certainly the pressure and strain upon the derrick would depend upon what lifting or pulling power could be developed, and the strain upon the derrick would increase as the number of lines increased. If a less powerful engine were employed and a single line, certainly it would not be contended that, as this less powerful engine pulled on the cable, the other end of which was attached to the granite mountain, it could possibly develop the strain or weight upon the derrick that was developed by the larger engine using three lines. But here, after the removing of the first joint, and a loosening up of the entire tubing, there was a limited weight to be hoisted. That weight ultimately, as it was hoisted, had to be sustained by the derrick. The weight was neither increased nor decreased by reason of the number of lines used in accomplishing the hoisting of the tubing. It is apparent too, as a matter of scientific principle, that a more powerful engine will develop more power than a less powerful one, if using the same intervening block and tackle appliances. The testimony is that the engine used was a very powerful one, and naturally, it would require less multiplication of that power than would a less powerful engine. And, after all, what was required to hoist this tubing was power, however it might be developed. Plaintiff's own witnesses testified that the greatest strain on the derrick was when they pulled loose and lifted the entire tubing with the fluid in it, and took off one joint of tubing, and that they saw no indication of weakness in the derrick at the time. Neither is there any claim of negligence in the process employed. Other witnesses testified that, in using three lines instead of two, the pick-up is easier, and that it is steadier. Another witness testified that "you have as much strain with three lines as you do with two, but the idea is that it is steadier, not jerky."

If we eliminate the testimony which does violence to the physical facts and scientific principle, we reduce it to the charge that, in using two lines instead of three, greater speed of the machine is required, and there may be jerking and jarring in starting. It is not claimed that this situation develops regardless of the kind of engine used, but it is stated as an observation of the witnesses. But it was necessary for plaintiff to show that

something of that sort did in fact occur in the instant case, not that it was possible to occur. Testimony of plaintiff contains no such proof, but, on the other hand, shows affirmatively that this did not occur. The witness Cook testified as follows with reference to this second movement:

"The elevator moved a little but he couldn't say how much; they hadn't been lifted out to any extent; he was about four or five feet from the tractor; the motor was not raced any more than usual and there was nothing about the operation that was carried on that day other than usual and ordinary."

Another one of plaintiff's witnesses testified as follows:

"When they got all the rods out they took the third line from the derrick leg and tied it to the main sill and then just as they started to take the strain, he (the witness) heard something pop and looked up and saw it just as they started to take the strain on the tubing."

There is testimony produced by defendant, which is undisputed, to the effect that the propriety of using two or three lines is dependent to a considerable extent upon the power of the engine used. The engine in use was a large one with five forward speeds and one reverse speed, with a rated capacity of 70 horse power. At the time of the accident it was being operated in second gear from low. The evidence is that this engine could pull the load in that gear "much easier than you could with an ordinary tractor in low." An expert, familiar with the engine used, testified that, "The Franks motor would pull the tubing with two lines and pull smoothly, but with smaller motors they would have to use three lines." Another witness, who was also called as a witness for plaintiff, testified that "It was possible to pull tubing with two lines on the Franks unit evenly and smoothly when it would not be possible on the smaller unit. On this Franks unit you would start out pulling on two lines after you pulled up a joint." Another witness testified with reference to this engine that it could pull that load of tubing with two lines much easier than a smaller unit could pull with three. Other testimony was to the effect that the determining factor as to whether two lines or three lines should be used in pulling this tubing was the weight that the pulling machine or engine would pull. This testimony is not only undisputed, but accords with the principles of mechanics.

We conclude that there was no substantial evidence tending to show that the collapse of this derrick was caused or contributed to by the use of two lines instead of three in hoisting the tubing. Any finding to that effect must be based upon mere guess, speculation, and surmise. If conjecture and speculation might be resorted to, it would seem more probable that the strain upon the derrick, caused by the heavy tugging and pulling on the tubing while it was stuck in the well, followed by the hoisting of the entire weight of the 2,000 feet of tubing, initiated a break in some vital part of the derrick, weakening it so that it gave way when the second load was placed upon it. But the first load, it is admitted, was handled in accordance with the accepted practice and usage. This issue should therefore not have been submitted to the jury, and it follows that, under the record, the court should have granted defendant's motion for a directed verdict.

It is strenuously argued by appellant that, if there was any negligence in the use of two lines instead of three, it was the negligence of Mr. Leggett, the foreman in charge of the crew, and that he was a fellow servant with plaintiff's intestate, for whose negligence the defendant was not responsible. In this connection it is argued that the Arkansas statutes, which provide that all corporations shall be liable in damages for injury to an employee caused by the negligence of any other agent, servant, or employee, is unconstitutional because violative of the due process and equal protection clause of the Constitution of the United States. We do not find it necessary to pass upon this question, as we are of the view that, under the testimony, the jury was warranted in finding that the negligence, if any, in the use of two lines instead of three, was that of defendant, and not of a fellow servant of plaintiff's intestate.

The judgment appealed from is reversed, and the cause remanded, with directions to grant defendant a new trial.